**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
               *Plaintiff-Appellee,*

v.

LISA RENEE LUJAN,
               *Defendant-Appellant.*

No. 02-30237

D.C. No.
CR-98-00480-
HA-02

OPINION

Appeal from the United States District Court
for the District of Oregon
Ancer L. Haggerty, District Judge, Presiding

Submitted September 25, 2007*
Portland, Oregon

Filed October 2, 2007

Before: Ferdinand F. Fernandez, Barry G. Silverman, and
Susan P. Graber, Circuit Judges.

Opinion by Judge Silverman

---

*This panel unanimously finds this case suitable for decision without
oral argument. *See* Fed. R. App. P. 34(a)(2).

**COUNSEL**

Ruben L. Iñiquez, Assistant Federal Public Defender, Portland, Oregon, for the defendant-appellant.

Jonathan L. Marcus, U.S. Department of Justice, Washington, D.C., for the plaintiff-appellee.

Charles L. Hobson, Criminal Justice Legal Foundation, Sacramento, California, for the amicus curiae.

**OPINION**

SILVERMAN, Circuit Judge:

Lisa Renee Lujan appeals from the district court's order authorizing the probation office to demand the collection of a blood sample as a condition of her supervised release, as mandated by the DNA Analysis Backlog Elimination Act of 2000 ("DNA Act"), 42 U.S.C. §§ 14135-14135e. She alleges that the Act violates the Fourth Amendment and the Ex Post Facto Clause, that it is an unconstitutional bill of attainder, and that it contravenes separation of powers. We reject these constitutional challenges and affirm.

**I. Background**

On May 10, 1999, Lujan pleaded guilty to one count of aiding and abetting unarmed bank robbery, in violation of 18 U.S.C. § 2113(a), and on May 22, 2000, the district court sentenced her to 18 months' imprisonment and three years of

supervised release. Three weeks later, on June 12, 2000, the district court granted the government's motion for a reduction of sentence pursuant to Federal Rule of Criminal Procedure 35(b), and Lujan's sentence was reduced to 12 months.

The terms of Lujan's supervised release made no mention of any requirement that she submit to a DNA sample.

On December 19, 2000, the DNA Act became effective. Pub. L. No. 106-546, 114 Stat. 2726. On January 28, 2002, while Lujan was on supervised release, the United States Probation Office notified her in writing that she had to provide a blood sample within 90 days. When Lujan failed to comply, the government filed a petition to revoke supervised release. The district court issued a summons for her appearance on April 10, 2002.

On April 17, 2002, Lujan filed a motion opposing the required collection as a new condition of her supervised release. In a July 9, 2002, order, the district court denied the motion and ordered her to comply with the directives of the probation office or risk a possible revocation hearing. On July 29, 2002, the court stayed its order pending appeal.

Lujan's appeal was held in abeyance pending the dispositions in *United States v. Kincade*, 379 F.3d 813 (9th Cir. 2004) (en banc), and *United States v. Reynard*, 473 F.3d 1008 (9th Cir. 2007), *petition for cert. filed*, ___ U.S.L.W. ___ (U.S. July 5, 2007) (No. 07-5195).

## II.  Jurisdiction

The district court had subject matter jurisdiction over the criminal proceeding under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291.

## III.  Standard of Review

Defendant challenges the constitutionality of a federal statute—a question of law that we review de novo. *United*

*States v. Zakharov*, 468 F.3d 1171, 1176 (9th Cir. 2006), *cert. denied*, 127 S. Ct. 2150 (2007).

## IV.  Discussion

**[1]** The DNA Analysis Backlog Elimination Act authorizes the probation office to collect a DNA sample from any individual on supervised release. *See* 42 U.S.C. § 14135a(a)(2). Lujan challenges the Act under four different provisions of the Constitution.

### A.   Fourth Amendment and Ex Post Facto Clause

**[2]** Lujan argues that the DNA Act constitutes a suspicionless search in violation of the Fourth Amendment and imposes a new condition on her supervised release in violation of the Ex Post Facto Clause. Our decision in *Kincade* disposes of the Fourth Amendment challenge. *See* 379 F.3d at 832 (upholding compulsory DNA collection on a "totality of the circumstances" analysis); *id.* at 840 (Gould, J., concurring in the judgment) (upholding DNA collection based on "special needs" doctrine). Our decision in *Reynard*, 473 F.3d at 1021, rejected an identical ex post facto challenge to the DNA Act after holding that the statute did not have a punitive effect. 473 F.3d at 1021.

### B.   Bill of Attainder

Lujan next asserts that the DNA Act imposes punishment on a disfavored class without judicial involvement, and is thus an unconstitutional bill of attainder.

**[3]** A law is an unconstitutional bill of attainder if it "legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protections of a judicial trial." *Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 468 (1977). Three inquiries determine whether a statute "inflicts punishment":

(1) whether the challenged statute falls within the historical meaning of legislative punishment; (2) whether the statute, "viewed in terms of the type and severity of burdens imposed, reasonably can be said to further nonpunitive legislative purposes"; and (3) whether the legislative record "evinces a congressional intent to punish."

*Selective Serv. Sys. v. Minn. Pub. Interest Research Group*, 468 U.S. 841, 852 (1984) (quoting *Nixon*, 433 U.S. at 473).

**[4]** Our analysis in *Reynard* forecloses Lujan's challenge on this element. *Cf. Butler v. Apfel*, 144 F.3d 622, 626 (9th Cir. 1998) (per curiam) (noting that "the touch-stone for our analysis" under either clause is "whether [the statute] is a form of punishment"). First, we held that "neither blood nor DNA collection [has] been historically viewed as punishment." *Reynard*, 473 F.3d at 1020. Second, we classified the disability imposed by the DNA Act as "minimal" and held that the statute was "a reasonable means by which Congress [could] achieve and regulate a non-punitive goal." *Id.* at 1020-21. Third, we reviewed the legislative history of the Act and determined that "it was not enacted for punitive reasons." *Id.* at 1019; *see also United States v. Hook*, 471 F.3d 766, 776 (7th Cir. 2006) (holding that the DNA Act was not a bill of attainder), *cert. denied*, 127 S. Ct. 2081 (2007).

## C.   Separation of Powers

Lujan lastly argues that the DNA Act violates the separation of powers doctrine because it allows probation officers, who work for the judicial branch, to exercise executive branch functions by detaining, restraining, and collecting a DNA sample from an uncooperative defendant. She contends that such "police functions" are normally performed by the executive branch and that requiring courts to perform them threatens the judicial branch's "institutional integrity."

"Congress may delegate to the Judicial Branch nonadjudicatory functions that do not trench upon the prerogatives of another Branch and that are appropriate to the central mission of the Judiciary." *Mistretta v. United States*, 488 U.S. 361, 388 (1989). "[A]n independent agency located within the Judicial Branch may undertake without constitutional consequences policy judgments pursuant to a legitimate congressional delegation of authority that, if undertaken by a court, might be incongruous to or destructive of the central adjudicatory mission of the Branch." *Id.* at 394 n.20; *see also United States v. Belgard*, 894 F.2d 1092, 1096 (9th Cir. 1990) ("[T]here is nothing unconstitutional about nonadjudicatory activities being undertaken by auxiliary bodies that are placed within the judicial branch."). The DNA Act is a legitimate delegation of congressional authority.

**[5]** First, the DNA Act does not encroach on the prerogatives of the executive branch. The probation office's authority is limited to the collection of the DNA sample. It has no role in analyzing that sample or in using the test results to detect, investigate, or prosecute other crimes—quintessential law enforcement functions vested in the executive branch. *See Hook*, 471 F.3d at 776-77; *United States v. Sczubelek*, 402 F.3d 175, 188 (3d Cir. 2005), *cert. denied*, 126 S. Ct. 2930 (2006).

**[6]** Second, the purpose of the DNA Act is consistent with the mission of the judiciary. As we recognized in *Reynard*, the statute seeks to deter recidivism by instilling in defendants a fear that future crimes of theirs will be readily identified. 473 F.3d at 1020. As the Third Circuit noted, such a purpose furthers "the two primary goals of supervised release[, which] are rehabilitation and the prevention of harm to others." *Sczubelek*, 402 F.3d at 189.

**AFFIRMED.**