# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
                    *Plaintiff-Appellee,*

            v.                          No. 07-10288
                                        D.C. No.
WALTER M. SCHALES,                      CR-05-00385-OWW
                    *Defendant-Appellant.*    OPINION

Appeal from the United States District Court
for the Eastern District of California
Oliver W. Wanger, District Judge, Presiding

Argued April 15, 2008
Submitted October 20, 2008
San Francisco, California

Filed October 20, 2008

Before: Mary M. Schroeder, Richard R. Clifton, and
Consuelo M. Callahan, Circuit Judges.

Opinion by Judge Callahan

14725

## COUNSEL

Daniel J. Broderick, Federal Defender, Melody M. Walcott, Assistant Federal Defender (Argued), of Fresno, California, on behalf of defendant-appellant Walter M. Schales.

McGregor W. Scott, United States Attorney, David L. Gappa, Assistant United States Attorney (Argued), of Fresno, California, on behalf of plaintiff-appellee The United States of America.

## OPINION

CALLAHAN, Circuit Judge:

Walter M. Schales ("Schales"), who was forty-five years old at the time of this incident, approached a fourteen-year-old girl at a Wal-Mart store located in Hanford, California, surreptitiously placed a digital camera underneath her mini-skirt, and took a photograph. Caught red-handed by another shopper, Schales quickly tried to delete the photographs stored on his camera. Despite Schales's efforts, local law enforcement recovered several pictures of two young girls from his camera and then sought a warrant to search his residence. Upon executing the warrant, law enforcement agents discovered an immense quantity of child pornography. Schales's collection included a number of morphed photographs that he created by taking pictures of local minor girls who were unaware that they were being photographed, cutting their faces from the photographs, and then pasting their faces on sexually explicit images of other girls that he downloaded from the internet. A forensic analysis of Schales's computer

revealed thousands of images of child pornography which had been downloaded from the internet, with many of the victims under the age of six.

After a four-day trial, Schales was found guilty of receiving or distributing material involving the sexual exploitation of minors, 18 U.S.C. § 2252(a)(2); possessing material involving the sexual exploitation of minors, 18 U.S.C. § 2252(a)(4)(B); and receiving or producing a visual depiction of a minor engaging in sexually explicit conduct that is obscene, 18 U.S.C. § 1466A(a)(1). On appeal, Schales launches an array of constitutional and evidentiary challenges to his convictions and sentence. For the reasons set forth below, we reject Schales's facial and as applied challenges to 18 U.S.C. § 1466A(a)(1); his sufficiency of evidence claim; his evidentiary challenge to the admission of the Wal-Mart incident; and his claim that the district court erred by refusing to adjust his sentence for acceptance of responsibility. However, as explained below, we remand the case back to the district court to vacate either his conviction for receiving material involving the sexual exploitation of minors in violation of 18 U.S.C. § 2252(a)(2) or for possessing material involving the sexual exploitation of minors in violation of 18 U.S.C. § 2252(a)(4)(B) because, on this record, his conviction for both violates the Double Jeopardy Clause.

## I.

After Schales was arrested at the Wal-Mart store, local law enforcement obtained a search warrant for Schales's residence. Upon arriving at Schales's home to execute the search warrant, an investigator asked Schales whether they would find any items related to child pornography in his home, to which he replied "yeah." During a search of Schales's home, law enforcement seized a significant quantity of child pornography and obscene depictions of minors engaged in sexually explicit conduct. Officers seized a computer, some peripheral devices, several CDs, DVDs, VHS tapes, 8mm tapes, digital

cameras, a video camera, morphed photographs, pornographic magazines, and women's underwear.

Investigators reviewed the seized material and discovered that Schales had taken large quantities of digital still and video images of approximately nine minors in his community. These female minors ranged in age from six to seventeen, and Schales had produced 15 to 100 obscene images of each of these victims. Investigators discovered thousands of images of child pornography from the internet downloaded onto his computer, many portraying children under the age of six. There were images of prepubescent children being anally and vaginally penetrated by adult males, and pictures depicting bestiality with females as young as six years of age. Schales also transferred images from his digital camera to his computer, which contained photo editing software. He used this software to manipulate images of himself, including some sexually explicit images, and obscene and sexually explicit images of minors that he had obtained from the internet. Schales produced morphed images of female minors engaged in sexually explicit conduct through this process.

The grand jury indicted Schales for receiving or distributing material involving the sexual exploitation of minors (Count 1), possessing material involving the sexual exploitation of minors (Count 2), and receiving or producing a visual depiction of a minor engaging in sexually explicit conduct that is obscene (Count 3). A jury found Schales guilty of all three counts. The district court sentenced him to a term of incarceration of 210 months on Counts One and Three, and 120 months on Count Two, to run concurrently. The court also imposed a lifetime period of supervised release.

## II.

**[1]** Obscenity has no protection under the First Amendment. *See United States v. Williams*, 128 S. Ct. 1830, 1835-36 (2008) (citing *Roth v. United States*, 354 U.S. 476, 484-85

(1957)). In *Miller v. California*, 413 U.S. 15 (1973), the Supreme Court articulated a three-part test to guide a jury's determination whether material is obscene, which considers: "(a) whether the average person, applying contemporary community standards would find that the work, taken as a whole, appeals to the prurient interest; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value." *Id.* at 24 (internal quotation marks and citations omitted). The three-part *Miller* test is still the operative framework used to evaluate obscenity. *See Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 246 (2002).

**[2]** Almost a decade after *Miller*, the Supreme Court first addressed a challenge to a statute prohibiting child pornography in *New York v. Ferber*, 458 U.S. 747 (1982), and held that the government may constitutionally prohibit the creation or promotion of pornography featuring real children even though it does not meet the *Miller* obscenity standard. In 1996, in response to technological developments, Congress passed the Child Pornography Prevention Act ("CPPA"), which extended the definition of child pornography to cover any visual image that "is, or appears to be, of a minor engaging in sexually explicit conduct" or has been promoted in a manner that "conveys the impression" of a minor engaging in sexually explicit conduct. 18 U.S.C. § 2256(8)(D) (1996) (repealed 2003). The Court in *Free Speech Coal.* struck down provisions of the CPPA as unconstitutionally overbroad because these provisions prohibited speech that did not meet the obscenity requirements under *Miller* and did not incorporate the *Ferber* requirement that actual minors be involved in the production of the child pornography. *Free Speech Coal.*, 535 U.S. at 246-51.

In response to this decision, Congress enacted the Prosecutorial Remedies and Other Tools to end the Exploitation of Children Today Act of 2003 ("PROTECT Act"). The PRO-

TECT Act amended the general obscenity statute in 18 U.S.C. § 1466A to proscribe the transfer of certain obscene visual representations of the sexual abuse of children. Subsection (a)(1) of section 1466A provides in part:

> Any person who . . . knowingly produces, distributes, receives, or possesses with intent to distribute, a visual depiction of any kind, including a drawing, cartoon, sculpture, or painting, that . . . depicts a minor engaging in sexually explicit conduct and is obscene . . . or attempts or conspires to do so, shall be subject to the penalties provided in section 2252A(b)(1) . . . .

18 U.S.C. § 1466A(a)(1).

## A.   18 U.S.C. § 1466A(a)(1) is Facially Constitutional.

We begin with Schales's challenge to the facial validity of 18 U.S.C. § 1466A(a)(1) on overbreadth and vagueness grounds. A challenge to the constitutionality of a federal statute is a question of law that is reviewed *de novo*. *United States v. Lujan*, 504 F.3d 1003, 1006 (9th Cir. 2007).

**[3]** The First Amendment to the United States Constitution provides that "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. amend. I. The Supreme Court recognizes that "[t]he freedom of speech has its limits; it does not embrace certain categories of speech, including defamation, incitement, obscenity, and pornography produced with real children." *Free Speech Coal.*, 535 U.S. at 245-46 (citations omitted). Accordingly, the government may ban the transportation and distribution of obscene material under *Miller*, irrespective of whether it involves a minor child, and all child pornography produced with real children under *Ferber*. *Free Speech Coal.*, 535 U.S. at 239-40.

**(1)    18 U.S.C. § 1466A(a)(1) is Not Unconstitutionally Overbroad**.

Schales contends that the inclusion in 18 U.S.C. § 1466A(a)(1) of drawings, cartoons, sculptures, and paintings in its definition of visual depictions means that any attempt at art that can be found to depict a minor engaging in sexually explicit conduct *or* is obscene is prohibited. He argues, therefore, that paper dolls, stick figures, and wooden toys are included within the prohibition of section 1466A(a)(1). At oral argument, however, Schales recognized that the plain language of section 1466A(a)(1) does indeed require that the depiction be obscene, *see* 18 U.S.C. § 1466A(a)(1) ("visual depiction of any kind, including a drawing, cartoon, sculpture, or painting, that . . . depicts a minor engaging in sexually explicit conduct [ ] *and* . . . is obscene") (emphasis added), but nonetheless maintained that the Supreme Court's decisions in *Ferber* and *Free Speech Coalition* suggest that section 1466A(a)(1) is unconstitutional because it encompasses material that is not produced with actual minors. He is wrong.

**[4]** "The Constitution gives significant protection from overbroad laws that chill speech within the First Amendment's vast and privileged sphere. Under this principle, [a statute] is unconstitutional on its face if it prohibits a substantial amount of protected expression." *Free Speech Coal.*, 535 U.S. at 244 (citing *Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973)); *see Williams*, 128 S. Ct. at 1838. A statute is not invalid simply because some impermissible applications are conceivable. *Ferber*, 458 U.S. at 772. Instead, the "law's application to protected speech [must] be 'substantial,' not only in an absolute sense, but also relative to the scope of the law's plainly legitimate applications." *Virginia v. Hicks*, 539 U.S. 113, 119-20 (2003).

**[5]** The fundamental overbreadth problem with the CPPA identified in *Free Speech Coalition* was that it "proscribe[d]

a significant universe of speech that [was] neither obscene under *Miller* nor child pornography under *Ferber*." *Free Speech Coal.*, 535 U.S. at 240. Congress addressed this defect when it drafted section 1466A(a)(1) by regulating only obscene conduct. The Supreme Court has repeatedly found that statutes that proscribe conduct only with respect to material that is obscene under the *Miller* test are not overbroad. *See, e.g.*, *Hamling v. United States*, 418 U.S. 87 (1974); *Paris Adult Theatre I v. Slaton*, 413 U.S. 49 (1973). Thus, section 1466A(a)(1) is not impermissibly overbroad because it too requires that the government satisfy the *Miller* standards. *See United States v. Handley*, 564 F. Supp. 2d 996, 1005 (S.D. Iowa, 2008) (holding that 18 U.S.C. § 1466A(a)(1) is not overbroad because it incorporates the *Miller* obscenity test); *United States v. Whorley*, 386 F. Supp. 2d 693, 696-97 (E.D. Va. 2005) (same). The fact that this statute does not require that an actual minor exist, *see* 18 U.S.C. § 1466A(c), is immaterial because, unlike the CPPA, section 1466A(a)(1) is an obscenity statute and not a child pornography statute.

**[6]** Schales's parade of horribles that paper dolls, stick figures, and wooden toys are going to be criminalized by this statute is illusory. For a work to be obscene it must appeal to the prurient interest, be patently offensive in light of community standards, and lack serious literary, artistic, political, or scientific value. *Miller*, 413 U.S. at 24. Obscenity can, of course, manifest itself in many different types of mediums. In *Kaplan v. California*, 413 U.S. 115 (1973), the Supreme Court stated that when it

> declared that obscenity is not a form of expression protected by the First Amendment, no distinction was made as to the medium of the expression. Obscenity can, of course, manifest itself in conduct, in the pictorial representation of conduct, or in the written and oral description of conduct. The Court has applied similarly conceived First Amendment

> standards to moving pictures, to photographs, and to words in books.

*Id.* at 118-19. If a work contains a visual depiction of a minor engaging in sexually explicit conduct and meets the *Miller* obscenity test, it may be proscribed by section 1466A(a)(1). *See, e.g.*, *Handley*, 564 F. Supp. 2d 996 (Japanese anime comic books); *Whorley*, 386 F. Supp. 2d 693 (same). The *Miller* obscenity test, however, serves as a "firewall to guard against constitutionally protected speech being swept within the ambit of the conduct criminalized by the statute[ ]." *Whorley*, *id*. at 697. Accordingly, we find that 18 U.S.C. § 1466A(a)(1) does not prohibit a substantial amount of protected speech and is thus not overbroad.

### (2)   18 U.S.C. § 1466A(a)(1) is Not Unconstitutionally Vague.

**[7]** To avoid being unconstitutionally vague, a penal statute must "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983) (citations omitted). "[T]he Constitution does not require impossible standards; all that is required is that the language conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices." *Hamling*, 418 U.S. at 111 (citation and internal quotation marks omitted). "[P]erfect clarity and precise guidance have never been required even of regulations that restrict expressive activity." *Williams*, 128 S. Ct. at 1845 (citation omitted).

**[8]** The Supreme Court has repeatedly rejected vagueness challenges to obscenity statutes. In *United States v. 12 200-Ft. Reels of Super 8mm. Film*, 413 U.S. 123 (1973), issued the same day as *Miller*, the Court extended the standards articulated in *Miller* for testing the constitutionality of state legisla-

tion dealing with obscenity to federal legislation. 413 U.S. at 130. The Court held that it was prepared to hold the generic terms — "obscene," "lewd," "lascivious," "filthy," "indecent," or "immoral" as used in 18 U.S.C. § 1462 (prohibiting the importation or transportation of obscene material) to describe regulated material — to be limited to the "patently offensive representations or descriptions of that specific 'hard core' sexual conduct given as examples in *Miller*." *Id.* at 130 n.7. Rejecting a vagueness challenge to 18 U.S.C. § 1461 (prohibiting the mailing of obscene material) the following year, the Supreme Court commented that its decision in *12 200-Ft. Reels of Super 8 mm. Film* "made clear our willingness to construe federal statutes dealing with obscenity to be limited to material such as that described in *Miller*." *Hamling*, 418 U.S. at 115; *see Smith v. United States*, 431 U.S. 291, 308-09 (1977) (concluding that section 1461 was not unconstitutionally vague because the type of conduct covered by the statute can be ascertained with sufficient ease to avoid due process problems). In *Reno v. ACLU*, 521 U.S. 844 (1997), the Supreme Court explained that the three-part *Miller* obscenity test is not vague because it "limits the uncertain sweep of the obscenity definition." *Id.* at 873. Accordingly, federal statutes dealing with obscenity are construed to incorporate the *Miller* standards and thus are not unconstitutionally vague. *See Ashcroft v. ACLU*, 535 U.S. 564, 581 n.11 (2002) (stating that while not mentioned in statutory text, the Court has held that the *Miller* test "defines regulated speech for purposes of federal obscenity statutes").

**[9]** Section 1466A(a)(1) is not unconstitutionally vague because it is limited to the prohibition of obscene material and thus employs the same *Miller* requirements that the Supreme Court has already deemed valid. We have observed that the definition of obscenity has survived vagueness challenges in a number of Supreme Court cases. *See Info. Providers' Coal. for Def. of the First Amendment v. FCC*, 928 F.2d 866, 874 (9th Cir. 1991) (citations omitted). There is no reason to treat section 1466A(a)(1) any differently. Fanciful hypotheticals

can be imagined to create vagueness arguments with respect to most any statute. However, as the Supreme Court recently explained in *Williams*, "[t]he problem that poses is addressed, not by the doctrine of vagueness, but by the requirement of proof beyond a reasonable doubt." 128 S. Ct. at 1846 (citation omitted). The Court further noted, "[w]hat renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is." *Id.* (explaining that the Court has "struck down statutes that tied criminal culpability to . . . wholly subjective judgments without statutory definitions, narrowing context, or settled legal meanings"). There is no such indeterminacy here because section 1466A(a)(1) proscribes only obscene material. Accordingly, we hold that 18 U.S.C. § 1466A(a)(1) is not unconstitutionally vague.

## B.   18 U.S.C. § 1466A(a)(1) is Constitutional As Applied to Schales.

Schales contends that the morphed images he created "fall through the cracks of the statutory prohibitions in § 1466A" because this statute incorporates the definition of child pornography in 18 U.S.C. § 2256(8), which requires that the "visual depiction . . . is, or is indistinguishable from, that of a minor engaging in sexually explicit conduct." Under his logic, because section 1466A encompasses drawings, cartoons, sculptures and paintings, it conflicts with section 2256(8)(B)'s requirement that the image be indistinguishable from a minor.[1]

[10] The fallacy of Schales's logic is his premise that section 1466A incorporates the definition of "child pornography" and requires that actual minors be victimized. In fact, the statute explicitly provides that "[i]t is not a required element of

---

[1]Notably, Schales never argued to the district court that the jury should be instructed on the definition of "child pornography" contained in 18 U.S.C. § 2256(8) when detailing the elements of section 1466A(a)(1).

any offense under this section that the minor depicted actually existed." 18 U.S.C. § 1466A(c). A plain reading of this statute makes clear that "child pornography" is not a requisite element of section 1466A(a)(1). We decline to "read words into a statute that are not there." *United States v. Watkins*, 278 F.3d 961, 965 (9th Cir. 2002) (citations omitted). We reiterate that this statute only encompasses obscenity under *Miller* and does not extend to child pornography under *Ferber*. Whether the images were of actual minors, morphed minors, or imaginary minors, section 1466A requires that the government prove that the visual depiction is obscene. Thus, 18 U.S.C. § 1466A(a)(1) was constitutionally applied to Schales's creation of morphed images.

## C.  There is Sufficient Evidence in the Record to Sustain Schales's Conviction under 18 U.S.C. § 1466A(a)(1).

[11] Schales challenges the sufficiency of evidence used to convict him of violating 18 U.S.C. § 1466A(a)(1). In order to obtain a conviction under this statute, the government must prove beyond a reasonable doubt that a defendant: (1) knowingly; (2) produces, distributes, receives or possesses with intent to distribute; (3) a visual depiction of any kind, including a drawing, cartoon, sculpture, or painting; (4) the visual depiction depicts a minor engaging in sexually explicit conduct; and (5) the visual depiction is obscene. *See* 18 U.S.C. § 1466A(a)(1). A challenge to the sufficiency of evidence introduced by the government is reviewed *de novo*. *United States v. Odom*, 329 F.3d 1032, 1034 (9th Cir. 2003). Viewing the evidence in the light most favorable to the government, this court must consider whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.*

At trial, the government proceeded under two theories to support a conviction under section 1466A(a)(1): first, that Schales received obscene visual depictions of minors, and second, that he produced obscene visual depictions of minors

through a morphing process.[2] Schales does not contest that the morphed images were obscene visual depictions. Instead, he maintains that the government did not introduce sufficient evidence to convict him of an offense under 18 U.S.C. § 1466A(a)(1) because a morphed image does not resemble a real minor and that the definition of "child pornography" contained in 18 U.S.C. § 2256(8) requires that the visual depiction be "indistinguishable from . . . that of a minor." We have already rejected this claim.

In reviewing the sufficiency of evidence against Schales, we focus on two pieces of evidence introduced by the government. The government's closing argument initially focused on one image, Exhibit 15-KW-6, and asserted that it supported Schales's conviction on all three counts. The government explained that Exhibit 15-KW-6 was created by "morphing" a photograph of a local minor girl with obscene pictures of a seven-year-old North Carolina girl with her "vaginal area . . . exposed and covered with semen and an adult male penis also appear[ing] in the image." Detective Wiens of the Fresno County Sheriff's Department conducted a computer forensic examination of CD-ROM discs seized at Schales's house. Detective Wiens testified that he produced a computer forensic report, which identified all of the images from the CD-ROM, including Exhibit 15-KW-6. FBI Special Agent McGrath testified that he recognized several of the images on the CD-ROM as part of a series depicting a seven-year old victim from Raleigh, North Carolina.[3] Special Agent McGrath also testified that one of the images depicted this prepubescent female with what appears to be semen on her. The local minor girl was identified by her father, who testified that the

---

[2]The term "producing" is defined as "producing, directing, manufacturing, issuing, publishing, or advertising." 18 U.S.C. § 2256(3).

[3]Detective Paige of the Palm Beach County Sheriff's Office also testified that he recognized images on the CD-ROM depicting a child and an adult male that he arrested. The minor female depicted was five years old at the time of the photograph.

photographs were taken of his youngest daughter, who was approximately ten years old at the time, at a church function his family attended with Schales.

At trial, the government also focused on two other images, Exhibits 40-KW-11 and 40-KW-12. These images depict "an adult male with an erect penis holding a photograph . . . that was recovered from the defendant's computer" of a "minor female exposing her anal and vaginal areas." The government asserts that Schales produced these images by using an image of a minor female engaged in sexually explicit conduct downloaded from the internet and combining it with a photograph of a local minor girl. The local minor girl pictured in these exhibits was identified by her mother, who testified that these photographs were taken of her daughter, who was approximately fifteen years old at the time, when the family was renovating a house with Schales's help.

[12] Thus, the government introduced images seized during the search of Schales's home and computer depicting images that he "received" over the internet and "produced" through a morphing process. A rational jury could certainly conclude that these images satisfy each element of section 1466A(a)(1) and the *Miller* standard of obscenity.[4] 413 U.S. at 24.

## D.   The District Court Did Not Abuse its Discretion by Admitting Evidence of the Wal-Mart Incident.

In a pretrial order, the district court concluded that the government could introduce three of the dozens of images that were recovered from Schales's camera seized from him at the Wal-Mart store. The district court also held that the government could present testimony that Schales was seen at Wal-Mart, that he walked behind a female with a camera in hand, that he took pictures of her, that he was seen pushing buttons

---

[4]The jury was instructed on each element to sustain a conviction under section 1466A(a)(1), including the *Miller* three-part obscenity test.

on his camera after being confronted by a witness, and that images were recovered from his camera. Schales does not challenge the district court's ruling that this evidence was separately admissible as: (1) "other act" evidence "inextricably intertwined" with the crime with which he was charged, *see United States v. Rrapi*, 175 F.3d 742, 748-49 (9th Cir. 1999); (2) Rule 404(b) evidence to show knowledge, intent, *modus operandi*, and absence of mistake; and (3) Rule 404(b) evidence of consciousness of guilt with respect to his attempts to delete the images on his camera, *see United States v. Meling*, 47 F.3d 1546, 1557 (9th Cir. 1995). Instead, he contends that this evidence was cumulative because there was a significant amount of testimony at trial dealing with him using photographs of local minor girls to create morphed images. A district court's evidentiary rulings are reviewed for an abuse of discretion, *United States v. Alvarez*, 358 F.3d 1194, 1205 (9th Cir. 2004), and will be reversed only if such error "more likely than not affected the verdict." *United States v. Pang*, 362 F.3d 1187, 1192 (9th Cir. 2004).

**[13]** Schales fails to explain how the court abused its discretion by admitting limited evidence of the Wal-Mart incident. Although the government introduced testimony that the defendant produced obscene images by morphing images, the Wal-Mart incident was part of the *res gestae* of the charged offenses and provided the jury with an example of how Schales would surreptitiously take photographs of minor girls in his community. Furthermore, the court limited the government to introducing only three of the dozens of recovered images from his camera, prohibited the introduction of Schales's false statements to the police, and did not allow admission of the fact that Schales had been issued a citation for his actions. Even if the admitted evidence should have been excluded, Schales fails to establish that this error more likely than not affected the verdict and thus was not harmless error. *See Pang*, 362 F.3d at 1192 ("Even if we find error, we will only reverse if an erroneous evidentiary ruling 'more likely than not affected the verdict.' ") (citation omitted).

**E. Schales Did Not Qualify for a Downward Adjustment for Acceptance of Responsibility.**

The district court refused to give Schales a downward adjustment in his offense level for acceptance of responsibility based on the factors set forth in U.S.S.G. § 3E1.1. Schales contends that the district court should have granted a downward adjustment because he accepted responsibility when law enforcement asked him prior to executing the search warrant of his home whether they would find any items related to child pornography and he replied "yeah." This court reviews "the district court's interpretation of the Sentencing Guidelines *de novo*, the district court's application of the Sentencing Guidelines to the facts of th[e] case for abuse of discretion, and the district court's factual findings for clear error." *United States v. Lambert*, 498 F.3d 963, 966 (9th Cir. 2007) (italics added and citation omitted).

**[14]** "A defendant is entitled to a downward adjustment if he clearly accepts responsibility for all of his relevant conduct." *United States v. Wilson*, 392 F.3d 1055, 1061 (9th Cir. 2004) (citation omitted). It is a "rare circumstance" for a defendant to be entitled to an adjustment where he asserts his right to a trial and "puts the government to its burden by contesting material factual matters." *Id.* (citation omitted). This court has "consistently held that where a defendant refuses to admit all of his guilt, his cooperation notwithstanding, a district court may properly deny a downward adjustment." *Id.* at 1063 (citations omitted). Here, not only did Schales refuse to admit guilt on any count, he also did not accept responsibility for *any* of his relevant conduct. Furthermore, his conduct does not satisfy any of the considerations listed in the Commentary to section 3E1.1 of the advisory Sentencing Guidelines dealing with acceptance of responsibility. *See* U.S.S.G. § 3E1.1. Recognizing that the district court is entitled to "great deference because of its unique position to evaluate a defendant's acceptance of responsibility," *Wilson*, 392 F.3d at 1061 (cita-

tion and internal quotation marks omitted), we affirm the court's denial of a downward adjustment.

## F.   The Double Jeopardy Clause Prohibits Schales's Convictions for Both Receipt and Possession of Material Involving the Sexual Exploitation of Minors.

**[15]** The Fifth Amendment's Double Jeopardy Clause protects criminal defendants against being punished twice for a single criminal offense. U.S. Const. amend. V. Schales contends that his convictions for both receiving material involving the sexual exploitation of minors in violation of 18 U.S.C. § 2252(a)(2) and possessing material involving the sexual exploitation of minors in violation of 18 U.S.C. § 2252(a)(4)(B) violate the Double Jeopardy Clause. Schales raises his double jeopardy challenge for the first time on appeal and therefore we apply a plain error standard of review. *See* Fed. R. Crim. P. 52(b). Under a plain error standard, relief is not warranted unless there has been: (1) error, (2) that is plain, (3) "that affects substantial rights," and (4) that "seriously affect[s] the fairness, integrity or public reputation of the judicial proceedings." *United States v. Olano*, 507 U.S. 725, 732 (1993) (citations omitted). Nonetheless, we find a double jeopardy violation because possession of sexually explicit material is a lesser-included offense of receipt of sexually explicit material and because the government has not sufficiently alleged separate conduct.

### (1)   The *Blockburger* Test.

**[16]** The Double Jeopardy Clause is implicated when a defendant has been convicted under two different criminal statutes and both statutes prohibit the same offense or one offense is a lesser-included offense of the other. *Rutledge v. United States*, 517 U.S. 292, 297 (1996); *United States v. Davenport*, 519 F.3d 940, 943 (9th Cir. 2008). We employ the *Blockburger* test to evaluate claims of a double jeopardy violation. *Id.* "[W]here the same act or transaction constitutes a

violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304 (1932).

We begin by examining whether receipt of material involving sexual exploitation of minors requires proof of an additional fact which possession of material involving sexual exploitation of minors does not. *See Davenport*, 519 F.3d at 943. In *Davenport*, we recently held that convictions for both receiving child pornography in violation of 18 U.S.C. § 2252A(a)(2) and possessing child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) violated the Double Jeopardy Clause because the offense of possessing child pornography is a lesser-included offense of the receipt of child pornography. 519 F.3d at 947; *see also United States v. Giberson*, 527 F.3d 882, 891 (9th Cir. 2008) (adopting *Davenport*). We see no reason to conclude otherwise when it comes to receiving material involving the sexual exploitation of minors in violation of 18 U.S.C. § 2252(a)(2) and possessing material involving the sexual exploitation of minors in violation of 18 U.S.C. § 2252(a)(4)(B). *Cf. United States v. Miller*, 527 F.3d 54, 64 n.10 (3d Cir. 2008) (noting that "[t]he jurisprudence concerning the receipt and possession of 18 U.S.C. § 2252 and the comparable provisions of 18 U.S.C. § 2252A often converges" and that "[t]hese statutory provisions have been characterized as 'materially identical' ").

[17] The Supreme Court has recognized that comparing statutes to determine whether one set of elements is a subset of another requires a purely textual comparison. *Carter v. United States*, 530 U.S. 255, 260-61 (2000). 18 U.S.C. § 2252(a)(2) states:

Any person who . . . knowingly receives, or distributes any visual depiction that has been mailed, or has been shipped or transported in interstate or foreign

commerce, or which contains materials which have been mailed or so shipped or transported, by any means including by computer, or knowingly reproduces any visual depiction for distribution in interstate or foreign commerce by any means including by computer or through the mails, if . . . (A) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and (B) such visual depiction is of such conduct.

18 U.S.C. § 2252(a)(4)(B) states:

Any person who . . . knowingly possesses 1 or more books, magazines, periodicals, films, video tapes, or other matter which contain any visual depiction that has been mailed, or has been shipped or transported in interstate or foreign commerce, or which was produced using materials which have been mailed or so shipped or transported, by any means including by computer, if . . . (i) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and (ii) such visual depiction is of such conduct.

A comparison of the texts of the receipt offense, § 2252(a)(2), and the possession offense, § 2252(a)(4)(B), reveals that possession is a lesser-included offense of receipt. We reiterated in *Davenport* that "federal statutes criminalizing the receipt of contraband [generally] require a knowing acceptance or taking . . . possession of the prohibited item." 519 F.3d at 943 (quoting *United States v. Romm*, 455 F.3d 990, 1001 (9th Cir. 2006)); *see Ball v. United States*, 470 U.S. 856, 865 (1985) (as a general matter, possession of contraband is a lesser-included offense of receipt of the item). Thus, while the government can indict a defendant for both receipt and possession of sexually explicit material, entering judgment against him is multiplicitous and a double jeopardy vio-

lation when it is based on the same conduct. *See Davenport*, 519 F.3d at 944 (citing *Ball*, 470 U.S. at 865).

### (2) The Acts Underlying the Receipt and Possession Counts are Based on the Same Conduct.

The government does not dispute that possession of sexually explicit material is a lesser-included offense of receipt of sexually explicit material. Instead, the government contends that there is no double jeopardy violation because the two counts are based on different acts. The *Blockburger* test is implicated only "where the same act or transaction constitutes a violation of two distinct statutory provisions." 284 U.S. at 304. The Double Jeopardy Clause does not, of course, prohibit the government from prosecuting a defendant for multiple offenses in a single prosecution. *Ohio v. Johnson*, 467 U.S. 493, 500 (1984); *United States v. Kuchinski*, 469 F.3d 853, 859 (9th Cir. 2006). The government, however, bears the burden of establishing multiple counts by charging and proving separate offenses. *See United States v. Planck*, 493 F.3d 501, 504-05 (5th Cir. 2007).

The government contends that the conduct charged in the receipt offense is factually different than the conduct charged in the possession offense because the indictment charges Schales with possession for a month longer than the receipt offense and because the evidence introduced at trial proves that Schales possessed and created copies of images that he transferred from one medium to another. The government asserts that this separate conduct — the receipt of the child pornography pictures on his computer hard drive and then the subsequent printing out of those images and retaining them on multiple compact discs — distinguishes this case from *Davenport* where the defendant's possession of images of child pornography was limited to the computer hard drive.

**[18]** The statute proscribing the possession of sexually explicit material prohibits the possession of "books, maga-

zines, periodicals, films, video tapes, or other matter which contain any visual depiction" of sexually explicit conduct. 18 U.S.C. § 2252(a)(4)(B). In *United States v. Lacy*, 119 F.3d 742 (9th Cir. 1997), we explained that a "matter," is the physical medium that contains the visual depiction such as a computer hard drive or a computer disc. *Id.* at 748. Thus, where a defendant has stored sexually explicit images in separate mediums, the government may constitutionally charge that defendant with separate counts for each type of material or media possessed.

For example, in *Planck*, the Fifth Circuit held that the government may permissibly charge a defendant with separate counts of possession for storing images of child pornography on a desktop, a laptop, and diskettes. 493 F.3d at 504. The court explained that "where a defendant has images stored in separate materials (as defined in 18 U.S.C. § 2252A), such as a computer, a book, and a magazine, the Government may charge multiple counts, each for the type of material or media possessed, as long as the prohibited images were obtained through the result of different transactions." *Id.* (citing *United States v. Buchanan*, 485 F.3d 274, 281-82 (5th Cir. 2007) (finding the defendant's convictions for multiple counts of receipt of child pornography were multiplicitous because the indictment failed to allege separate receipt of the four images identified)).

**[19]** The indictment in this case charged Schales with receipt and possession of sexually explicit material based on the same conduct. In Count One, relating to receipt, the grand jury returned an indictment that charged Schales

> from in or about January 2005, and continuing through September, 2005 . . . did knowingly receive and distribute, via computer, visual depictions, the producing of which involved minors engaging in sexually explicit conduct, which depictions had been transported in interstate commerce, specifically: the

defendant, using a computer and modem, received
and distributed via the Internet and interstate com-
merce, numerous image files, including but not lim-
ited to Joint Photographic Experts Format files and
Graphic Interchange Formats (JPEG & GIF files) all
of which, as the defendant then knew, contained
visual depictions, the producing of which involved
the use of minors engaged in sexually explicit con-
duct . . . .

In Count Two, relating to possession, the grand jury returned
an indictment that charged Schales

from in or about January 2005, and continuing
through October 4, 2005 . . . did knowingly possess
visual depictions, the producing of which involved
minors engaging in sexually explicit conduct, which
depictions had been transported in interstate com-
merce, specifically: the defendant obtained posses-
sion via the Internet of numerous image files,
including but not limited to Joint Photographic-
Experts Format files and Graphic Interchange For-
mats (JPEG & GIF files) all of which contained
visual depictions, the producing of which involved
the use of minors engaged in sexually explicit con-
duct . . . .

Nothing in the indictment indicates that Schales was charged
with, or prosecuted for, different conduct.

[20] If the government wishes to charge a defendant with
both receipt and possession of material involving the sexual
exploitation of minors based on separate conduct, it must dis-
tinctly set forth each medium forming the basis of the separate
counts. For example, we note that there would have been no
double jeopardy violation if the government had distinctly
charged Schales with both receipt of material involving the
sexual exploitation of minors for the images that he down-

loaded from the internet and with possession of material involving the sexual exploitation of minors for the images that he transferred to and stored on compact discs. However, the indictment as written does not allow us to conclude that the jury found Schales guilty of separate conduct. Instead, the indictment charges Schales with receipt of the material by way of downloading it from the internet onto his computer and possession of this material in the same medium. This is multiplicitous. *See Davenport*, 519 F.3d at 947; *Giberson*, 527 F.3d at 891.

**[21]** The district court's jury instructions and the jury's verdict do not lead us to a different conclusion. The district court instructed the jury on the elements of both receipt and possession of material involving the sexual exploitation of minors. The jury was not instructed that it would have to find separate conduct. The district court did not utilize a special verdict form to indicate to the jury that it would have to find separate conduct. In fact, the government argued to the jury that it could convict Schales on all three counts by relying solely on one image. On this record, we cannot conclude that Schales was convicted for separate conduct.

**[22]** As we have done in *Davenport* and *Giberson*, we find that Schales's concurrent sentences for both receipt and possession of material involving the sexual exploitation of minors constitute plain error and that this affects "substantial rights by imposing on him the potential collateral consequences of an additional conviction." *Giberson*, 527 F.3d at 891 (quoting *Davenport*, 519 F.3d at 947). "[B]ecause the prohibition against double jeopardy is a cornerstone of our system of constitutional criminal procedure, this error threatens the fairness, integrity, and public reputation of our judicial proceedings." *Id.* (quoting *Davenport*, 519 F.3d at 947). Where we conclude that a defendant has suffered a double jeopardy violation because he was erroneously convicted for the same offense under two separate counts, and we find that the evidence was sufficient to support either conviction, "the only remedy con-

sistent with the congressional intent is for the [d]istrict [c]ourt, where the sentencing responsibility resides, to exercise its discretion to vacate one of the underlying convictions." *Ball*, 470 U.S. at 864.

## III.

**[23]** In sum, we find that Schales's facial and as applied challenges to 18 U.S.C. § 1466A(a)(1) lack merit. Section 1466A(a)(1) proscribes obscene visual depictions of minors engaging in sexually explicit conduct. The scope of this penal statute extends only to obscene visual depictions, as articulated by the Supreme Court in *Miller*, and thus, the existence of an actual minor is unnecessary. Furthermore, we reject Schales's sufficiency of evidence claim, his challenge to the district court's admission of the Wal-Mart evidence, and his assertion that the district court erred by refusing to adjust his sentence for acceptance of responsibility. Finally, we remand this case to the district court to vacate either Schales's conviction for receiving material involving the sexual exploitation of minors in violation of 18 U.S.C. § 2252(a)(2), or for possessing material involving the sexual exploitation of minors in violation of 18 U.S.C. § 2252(a)(4)(B). In this case, convictions for both receipt and possession of material involving the sexual exploitation of minors violates the Double Jeopardy Clause. The district court should allow the vacated offense to be reinstated without prejudice if Schales's other conviction is overturned on direct or collateral review.

Accordingly, we reject Schales's challenges to his conviction and sentence except that the case is remanded to the district court to vacate either his conviction for receiving material involving the sexual exploitation of minors in violation of 18 U.S.C. § 2252(a)(2) or his conviction for possessing material involving the sexual exploitation of minors in violation of 18 U.S.C. § 2252(a)(4)(B).