**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
    *Plaintiff-Appellee,*

v.

RYAN CHRISTOPHER LYNN,
    *Defendant-Appellant.*

No. 09-10242

D.C. No.
1:08-cr-00172-
LJO-1

ORDER AND
AMENDED
OPINION

Appeal from the United States District Court
for the Eastern District of California
Lawrence J. O'Neill, District Judge, Presiding

Argued and Submitted
November 29, 2010—San Francisco, California

Filed February 23, 2011
Amended May 31, 2011

Before: Mary M. Schroeder, Sidney R. Thomas, and
Ronald M. Gould, Circuit Judges.

Opinion by Judge Gould

## COUNSEL

Geoffrey M. Jones, Esq., Law Office of Geoff Jones, San Francisco, California, for the defendant-appellant.

Benjamin B. Wagner, United States Attorney, and David L. Gappa (argued), Assistant United States Attorney, Fresno, California, for the plaintiff-appellee.

## ORDER

The opinion in the above-captioned matter filed on February 23, 2011, and published at 636 F.3d 1127, is amended as follows:

At slip opinion page 2851, line 2, insert the word "the" between "susceptible to" and "criminal conduct."

Appellant's Petition for Panel Rehearing is DENIED.

The full court has been advised of the Petition for Rehearing En Banc and no judge of the court has requested a vote on the Petition for Rehearing En Banc. Fed. R. App. P. 35. Appellant's Petition for Rehearing En Banc is also DENIED.

No future petitions for rehearing or rehearing en banc will be entertained.

**IT IS SO ORDERED.**

**OPINION**

GOULD, Circuit Judge:

Ryan Christopher Lynn appeals his conviction and sentence for receiving or distributing visual depictions of a minor engaging in sexually explicit conduct in violation of 18 U.S.C. § 2252(a)(2) (2006) and for possessing visual depictions of a minor engaging in sexually explicit conduct in violation of 18 U.S.C. § 2252(a)(4)(B) (2006).[1]

Lynn's principal argument is that his convictions should be reversed because they were not supported by sufficient evidence that the visual depictions had been transported in interstate commerce, an element of the offenses. He contends in the alternative that the simultaneous convictions for receiving and possessing visual depictions of a minor engaging in sexually explicit conduct (hereinafter "child pornography")[2] were based on the same underlying conduct and therefore violate the Fifth Amendment's prohibition on double jeopardy. Finally, Lynn argues that, if his convictions are upheld, the case should be remanded for resentencing because the district court committed procedural error in calculating the Sentencing Guidelines offense level when it included a two-level upward adjustment for a vulnerable victim under U.S.S.G. § 3A1.1(b)(1).

We have jurisdiction under 28 U.S.C. § 1291. We conclude that Lynn's convictions were supported by sufficient evidence. But, determining that there was a double jeopardy violation, we vacate the sentence and remand to the district court with instructions to vacate one of the convictions. We also

---

[1]Lynn was charged and convicted under a predecessor version of 18 U.S.C. § 2252, which was in effect from July 27, 2006 to October 7, 2008. All citations to § 2252 in this opinion refer to this prior version.

[2]Although the statutes at issue do not use the term "child pornography," we use it here for brevity.

conclude that there was no procedural error in the district court's calculation of the applicable Sentencing Guidelines range.

# I

On May 23, 2008, federal agents executed a search warrant at the home of Ryan Christopher Lynn, age 21, in Fresno, California, where he lived with his father. The agents seized Lynn's Toshiba laptop computer and found about 184 video files and 53 still images of child pornography stored on its hard drive. Lynn had downloaded the videos and images from the Internet through a peer-to-peer file sharing program called Limewire, which is described in more detail below. In May 2008, Lynn was indicted for receipt or distribution of child pornography in violation of § 2252(a)(2) and possession of child pornography in violation of § 2252(a)(4)(B), as well as a forfeiture count related to the laptop.

Lynn went to trial, and a jury returned a verdict of guilty on both substantive counts. During trial, the government presented an expert, Robert Leazenby, Special Agent with the Wyoming Division of Criminal Investigation, to explain to the jury the basics of computers, the Internet, and peer-to-peer networks. Among other things, Agent Leazenby explained the nature of the Limewire program and the "Gnutella" network it relies on, which together permit users to share files over the Internet. Once individual users or "peers" download the Limewire software to their computers, they can access dynamic indexing servers within the network that store information about the files being offered for download, or shared, by other peers in the network. A Limewire user can conduct a search of those files, pull up a list of users that have a file meeting the search criteria, and then download files that they want directly from other peers. Upon downloading the program, a Limewire folder is created on the hard drive, with sub-folders called "Incomplete," "Shared," and "Saved." When a user downloads a file using Limewire, the file begins

to download into the folder marked Incomplete. After the download is complete, the file is placed in the Saved folder, where by default it can be accessed by other members of the network.[3]

The government also called Kevin Wiens, an expert in computer forensics and the investigation of child exploitation cases with the Fresno County Sheriff's Department, to testify regarding his forensic examination of Lynn's laptop computer. He explained that Lynn's laptop had a Limewire folder with the standard sub-folders and that Wiens had located child pornography videos within the Shared, Saved, and Incomplete folders, and child pornography still images within the Saved and Shared folders.

The government's evidence on the interstate commerce element consisted of the testimony of two witnesses, Michael Crozier, retired Chief Deputy for the Stephens County Sheriff's Office in Georgia, and Roy Shepherd, of Richland, Washington's police department. A portion of one video retrieved from the Limewire Saved folder on Lynn's laptop was played for the jury, and Crozier identified the subject of the video as a minor victim of sexual abuse and exploitation from Georgia. He also stated that a copy of the video was found to have been mailed from an address in Georgia to London, England. Shepherd's testimony took a similar course: a portion of another video from Lynn's laptop (found in the Limewire Shared folder) was shown, and Shepherd identified its subject as a minor victim of sexual abuse and exploitation that took place in Washington.

Lynn's defense was that he downloaded the child pornography from Limewire inadvertently—that is, without knowledge that the files he selected en masse for download contained

---

[3]For further discussion of Limewire, see *United States v. Flyer*, ___ F.3d ___, No. 08-10580, 2011 WL 383967, at *1 (9th Cir. Feb. 8, 2011) and *United States v. Lewis*, 554 F.3d 208, 211 (1st Cir. 2009).

depictions of child pornography—and that he did not open or view the files after downloading them (with the exception of one image, which he immediately deleted). David Penrod, a computer forensics expert who examined an exact duplicate of Lynn's hard drive, testified on behalf of Lynn. Among other things,[4] Penrod discussed the Gnutella network and said that, in using the network, one could be downloading files from users located in different states or countries, or right next door. Lynn also testified in his own defense.

The prosecutor's closing argument on the element of interstate commerce consisted of the following:

> And you could look at [the interstate commerce element] as having been satisfied also with more than enough evidence. Any one image would be sufficient to support a conviction if the other elements are met. But just looking at that image element, it's clear that there were hundreds of images of minors engaged in sexually explicit conduct.
>
> And for two of those images, we had witnesses come in from Washington [s]tate and the state of Georgia to explain they were investigators on those cases where those images were produced and they were produced in the state in which the abuse took place, in Washington or in Georgia.
>
> And in the case of witness from Georgia, he said that he became aware of the need to investigate the case because the particular video, which was four hours in length, had surfaced in the United Kingdom.

---

[4]Wiens and Penrod gave conflicting views on whether the evidence demonstrated that Lynn had opened and viewed the various files containing child pornography. However, this conflict was resolved by the jury and is not relevant to the questions presented on appeal.

> So that image and those images had traveled not only in interstate commerce, from Georgia to California, but also from Georgia to the United Kingdom.

> So, again, more than abundant evidence to find that this element has been met and that the defendant knew that the producing of the visual depiction involved the use of a minor engaged in sexually explicit conduct.

> Again, this is something where you will have to use your common sense.

Following the government's case-in-chief, Lynn moved for judgment of acquittal under Federal Rule of Criminal Procedure 29, arguing that the government had produced insufficient evidence to meet its burden on the interstate commerce element of the charged offenses. The district court denied the motion at the close of evidence. After the jury returned a verdict of guilty on both counts, Lynn renewed his motion for judgment of acquittal under Rule 29, again on the basis of the interstate commerce element, and for a new trial under Rule 33. The district court denied these motions.

At sentencing, the district court adopted the Sentencing Guidelines range calculation in the Presentence Investigation Report, which was offense level of 41, criminal history category I, for a range of 324 to 405 months. The offense level included a two-level adjustment pursuant to U.S.S.G. § 3A1.1(b)(1)[5] for a vulnerable victim, to which Lynn objected in writing. Although the probation officer recom-

---

[5]The Presentence Investigation Report and the briefs refer to U.S.S.G. § 3A1.1(b)(1)(B)(1). There is no such section in the applicable version of the Guidelines, but we assume reference is made to § 3A1.1(b)(1) which states: "If the defendant knew or should have known that a victim of the offense was a vulnerable victim, increase by 2 levels."

mended a below-Guidelines sentence of 182 months, the district court sentenced Lynn to 210 months' imprisonment on the receipt count, and 120 months' imprisonment (the statutory maximum) on the possession count, to be served concurrently, with supervised release for a term of life.

## II

Lynn raises three basic contentions in this appeal. First, he contends that his convictions for receipt and possession of child pornography under § 2252 should be reversed because the government did not establish at trial that the visual depictions of child pornography that he downloaded had been mailed, shipped, or transported in interstate commerce. Second, he contends his simultaneous convictions for receiving and possessing child pornography were based on the same underlying conduct and thus violate the prohibition on double jeopardy. Third, Lynn contends that the district court committed a procedural error in sentencing by including an adjustment in offense level for a vulnerable victim.

## A

[1] At the time of Lynn's offense, § 2252(a)(2) punished anyone who "knowingly receive[d], or distribute[d], any visual depiction [of child pornography] that has been mailed, or has been shipped or transported in interstate or foreign commerce, . . . by any means including by computer . . . ." Section 2252(a)(4)(B) similarly punished those who "knowingly possesse[d] 1 or more books, magazines, periodicals, films, video tapes, or other matter which contain any visual depiction [of child pornography] that has been mailed, or has been shipped or transported in interstate or foreign commerce, . . . by any means including by computer . . . ." This part of the case boils down to whether evidence that a video depicting child pornography was originally produced in another state suffices for a rational trier of fact to find that the visual depiction "has been mailed, or has been shipped or trans-

ported in interstate or foreign commerce." § 2252(a)(2), (a)(4)(B).

We review a challenge to the sufficiency of the evidence de novo. *United States v. Green*, 592 F.3d 1057, 1065 (9th Cir. 2010). "Evidence is sufficient to support a conviction unless, viewing the evidence in the light most favorable to sustaining the verdict, no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Overton*, 573 F.3d 679, 685 (9th Cir. 2009).

**[2]** According to Lynn, the government's evidence on the out-of-state production of certain videos was insufficient because it did not bear on whether the actual contraband— which he contends are the digital video files found on Lynn's laptop—had crossed a state border. He contends that the "original" child pornography videos, first produced in Washington and Georgia, respectively, are not the same visual depiction as the digital video files received on Lynn's laptop via Limewire. Thus, Lynn's position is that even if the video was made in a different state, the interstate commerce element is not satisfied because he might have downloaded the visual depiction from an in-state Limewire user. Lynn further urges us to reject the holding of several of our sister circuits that, in the absence of other evidence, proof that a defendant used the Internet to acquire child pornography satisfies the interstate commerce element.

**[3]** The government responds that the uncontroverted evidence that some of the original videos were produced in other states is sufficient to meet its burden. In its view, the jurisdictional elements of § 2252(a)(2) and (a)(4)(B) do not require proof that the specific digital video file on Lynn's laptop moved interstate; it is enough that the video footage, fixed in any medium, was mailed, shipped, or transported in interstate or foreign commerce at any point before arriving on Lynn's laptop via Limewire. The government also argues that, even accepting Lynn's incorrect understanding of "visual depic-

tion," the prosecution showed that the digital video and image files stored on Lynn's laptop traveled interstate by presenting evidence about the way files are acquired using Limewire. As a final alternative, the government asks the panel to hold that proof of use of the Internet to obtain child pornography, without more, satisfies the interstate commerce element given the inherently interstate nature of the Internet.

**[4]** We start with a look at the particular jurisdictional language Congress used in the statutes at issue. Both § 2252(a)(2) and (a)(4)(B) require the government to prove that a visual depiction "has been" mailed, shipped, or transported "in interstate or foreign commerce." § 2252(a)(2), (a)(4)(B). The Supreme Court has explained that Congress's decision to use the present perfect tense ("has been") in a jurisdictional element of a statute "denot[es] an act that has been completed." *Barrett v. United States*, 423 U.S. 212, 216-17 (1976) (holding that a firearm "has been" shipped in interstate commerce where the defendant purchased the weapon from a vendor within his state of Kentucky, but the weapon was manufactured in Massachusetts, shipped to North Carolina, and then received by the vendor in Kentucky). Thus, the interstate commerce element of both § 2252(a)(2) and (a)(4)(B) is met where the visual depiction "already has completed its interstate journey" before it is downloaded and received by the defendant. *Id.* at 217. In other words, the government's position is that to convict for receipt and possession of child pornography, the government did not have to show that the specific transfer of a visual depiction of child pornography from one Limewire user to Lynn's laptop involved the crossing of a state border. The evidence must show only that the visual depiction has, at some time, crossed a state or international boundary.[6]

---

[6]By contrast, statutes punishing those who mail, transport, or ship child pornography in interstate commerce require proof that the defendant himself moved the image across state lines, as the interstate element modifies the act of mailing, transporting, or shipping, rather than attaching to the visual depiction. *See Flyer*, 2011 WL 383967, at *5; *United States v. Wright*, 625 F.3d 583, 594 (9th Cir. 2010). For this reason our recent decisions in *Flyer* and *Wright* do not apply.

**[5]** Lynn nevertheless asserts that the government must prove he received the child pornography videos by way of an interstate Limewire transaction, because the "original" videos, created in other states, and the digitized copies of those videos he eventually downloaded are separate visual depictions. Notably, Lynn does not argue that each and every digital copy of a pornographic video constitutes a completely distinct visual depiction for purposes of tracking interstate movement. Indeed, such a position would make it impossible to prove the interstate movement of any digital image or video by computer, even though § 2252 explicitly punishes the receipt or possession of child pornography "by any means including by computer." § 2252(a)(2). Lynn concedes that the government could establish the jurisdictional element by showing that Lynn had downloaded a digital video file from the computer of a Limewire user located in another state, even though Lynn's laptop would have to "create" a digital copy of the file in the process.[7] Lynn's attempt to separate the original video and his digital copy into two distinct visual depictions relies not on the digital copying or reproduction of the videos, but

---

[7]Given the nature of his argument, Lynn's reliance on our decisions in *United States v. Lacy*, 119 F.3d 742, 750 (9th Cir. 1997) and *United States v. Guagliardo*, 278 F.3d 868, 871 (9th Cir. 2002) (per curiam), is misplaced. In those cases, we held that digital copying of a pornographic image "produced" a visual depiction for purposes of establishing that the visual depiction was produced using materials (a computer or disk) that had moved in interstate commerce. *Lacy* explains that jurisdiction under § 2252(a)(4)(B) can be established by proving either "that the visual depictions were transported in interstate commerce *or* that they were produced using materials which have been mailed or so shipped or transported, by any means including by computer." 119 F.3d at 750 (citations and internal quotation marks omitted) (emphasis added). *Lacy* and *Guagliardo* addressed the production of the visual depictions, not their transportation in interstate commerce, which is at issue here, and do not establish that a *new* visual depiction is created for purposes of tracking interstate movement each time an image is copied. Because the issues posed in this case, on the one hand, and in *Lacy* and *Guagliardo*, on the other hand, are different, we are not persuaded by Lynn's position, asserted at oral argument, that the government "can't have it both ways."

on his premise that when an image or video is placed into a different *medium* (from a VHS tape to an MPEG file, for example), it becomes a distinct "visual depiction" for purposes of tracking its interstate movement. To evaluate and resolve his claim thus requires us to examine the term "visual depiction" and its function in the statutes, with an aim to determine whether a visual depiction is fixed in, rather than independent from, its medium.

[6] At the time of Lynn's conviction, 18 U.S.C. § 2256(5) stated that a " 'visual depiction' includes undeveloped film and videotape, and data stored on computer disk or by electronic means which is capable of conversion into a visual image." 18 U.S.C. § 2256(5). Because it uses the word "includes" rather than "means," § 2256(5) does not so much define "visual depiction" as provide a non-exhaustive list of examples of visual depictions. *See United States v. Hockings*, 129 F.3d 1069, 1071 (9th Cir. 1997) (explaining that § 2256(5) "is not drafted as an exhaustive list of all items that constitute a 'visual depiction' "). Section 2256(5) does not list, for instance, a photograph, which is indisputably a visual depiction. Section 2256 is designed to ensure that new technologies come within the scope of the child pornography statutes, particularly those that capture images and videos in condensed forms that do not superficially look like traditional "visual depictions."**[8]** The few cases in this circuit interpreting § 2256(5) have involved questions of whether "visual depiction" reaches an image or video captured in an unusual format and have reinforced the inclusive nature of the term. *See, e.g.*, *United States v. Romm*, 455 F.3d 990, 998-99 (9th Cir. 2006) (holding that files in an Internet cache are visual depictions);

---

**[8]**Section 2256(5) was amended to keep up with the changing technologies, and now states that a visual depiction "includes undeveloped film and videotape, data stored on computer disk or by electronic means which is capable of conversion into a visual image, and data which is capable of conversion into a visual image that has been transmitted by any means, whether or not stored in a permanent format." 18 U.S.C.A. § 2256(5) (West 2011).

*Hockings*, 129 F.3d at 1072 (holding that graphic interchange format (GIF) files are visual depictions).

**[7]** But nowhere in § 2256 did Congress specify that a "visual depiction," in contravention of its ordinary meaning, should be tied or fixed to a particular medium. There are indications to the contrary elsewhere in the statutory text. For example, § 2252(a)(4)(B) criminalizes the possession of "books, magazines, periodicals, films, video tapes, or other matter which *contain* any visual depiction" of child pornography, suggesting a visual depiction is something that may be captured within or on a particular matter or medium, but also exists independently of its format. § 2252(a)(4)(B) (emphasis added); see also *Lacy*, 119 F.3d at 748 (explaining that "[t]he statute indicates that at a minimum, a 'matter' must be capable of containing a visual depiction" and noting that both disks and GIF files could be viewed as "containing" a visual depiction); *United States v. Schales*, 546 F.3d 965, 979 (9th Cir. 2008) (noting in the double jeopardy context that "a 'matter,' is the physical medium that contains the visual depiction," and that images can be stored in "separate mediums").

**[8]** We are persuaded that when Congress enacted § 2252(a)(2) and (a)(4)(B), it criminalized the receipt, distribution, and possession of images and videos of child pornography, regardless of the format or media in which such images were captured when the offender was caught. As we explained in a different context: "The visual image transported in binary form starts and ends pornographically and that is what Congress seeks to prohibit." *Hockings*, 129 F.3d at 1072.

**[9]** We hold that the government met its burden on the interstate commerce element because a rational trier of fact could reasonably conclude that the visual depictions Lynn downloaded from Limewire—the images depicting the sexual exploitation of minors—had previously moved in interstate commerce. The evidence established that two videos in

Lynn's possession were first produced in states other than California.[9] Viewing the evidence in the light most favorable to sustaining the verdict, a rational trier of fact could have found beyond a reasonable doubt that the visual depictions crossed state lines before they were downloaded onto Lynn's laptop.[10] If child pornography is produced in one state and the visual depictions—the images—end up on a defendant's computer in another state, regardless of changes of medium, the jurisdictional provisions requiring that visual depictions of child pornography have been shipped, mailed, or transported in interstate or foreign commerce are satisfied. Stated another way, such evidence is sufficient to sustain a jury determination that the interstate commerce element was met. We reject Lynn's claim that his convictions were not supported by sufficient evidence.

## B

**[10]** Lynn contends that his convictions for receipt and

---

[9]Lynn's reliance on the Tenth Circuit cases *United States v. Schaefer*, 501 F.3d 1197 (10th Cir. 2007), and *United States v. Wilson*, 182 F.3d 737 (10th Cir. 1999), for the proposition that evidence of out-of-state production cannot establish the interstate commerce element is off the mark. *Wilson* is distinguishable because it dealt with a method of proving interstate movement that is not invoked in this case, namely that the *materials* used to produce the images of child pornography moved in interstate commerce. And contrary to Lynn's argument that *Schaefer* forecloses the out-of-state production theory of proof in the Tenth Circuit, that circuit has applied that theory. *See United States v. Espinoza*, No. 09-8102, 2010 WL 4739519 at *3 (10th Cir. Nov. 23, 2010); *United States v. Swenson*, 335 F. App'x 751, 753 (10th Cir. 2009). Tenth Circuit Rule 32.1 provides that unpublished decisions from that circuit may be cited for their persuasive value. 10th Cir. R. 32.1. If interpreted otherwise, we would not consider *Schaefer* persuasive on the interstate commerce issue.

[10]Because we conclude that the government's evidence of out-of-state production was sufficient to meet its burden on the interstate commerce element, we need not address the government's alternative theories related to Lynn's use of the Limewire program and the Internet generally, or the effect of *Wright* on the viability of those theories.

possession of child pornography, based on essentially the same evidence, violate the Double Jeopardy Clause of the Fifth Amendment. Where, as here, a claim of a double jeopardy violation was not properly raised before the district court, we review for plain error. *United States v. Davenport*, 519 F.3d 940, 943 (9th Cir. 2008). Under the plain error standard, we will affirm the sentence unless: "(1) there has been an error in the proceedings below; (2) that error was plain; (3) it affected substantial rights; and (4) it seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Id.*

The Fifth Amendment's prohibition on double jeopardy protects criminal defendants against being punished twice for a single criminal offense. U.S. Const. amend. V. "When a defendant has violated two different criminal statutes, the double jeopardy prohibition is implicated when both statutes prohibit the same offense or when one offense is a lesser included offense of the other." *Davenport*, 519 F.3d at 943. "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304 (1932).

**[11]** We have previously had occasion to apply the *Blockburger* test to the very statutes at issue here. In *United States v. Schales*, we concluded that possession of child pornography under § 2252(a)(4)(B) is a lesser-included offense of receipt under § 2252(a)(2), and, "while the government can indict a defendant for both receipt and possession of sexually explicit material, entering judgment against him is multiplicitous and a double jeopardy violation when it is based on the same conduct." 546 F.3d at 978. We have granted relief for double jeopardy violations in several cases where a defendant was convicted and punished for both receipt and possession of child pornography under § 2252 or § 2252A. *See, e.g.*, *United*

*States v. Brobst*, 558 F.3d 982, 1000 (9th Cir. 2009); *Davenport*, 519 F.3d at 947; *United States v. Giberson*, 527 F.3d 882, 891 (9th Cir. 2008). *But see Overton*, 573 F.3d at 696-98 (rejecting a double jeopardy claim in part because the district court explicitly found that the receipt conviction was based on images downloaded from the Internet, and the possession conviction was based on pictures the defendant took of his minor step-daughter). However, we have also suggested that convictions for receipt and possession of child pornography images may, with properly formed allegations, be premised upon the same images. *See Overton*, 573 F.3d at 697-98.

The government argues that this case is distinguishable from *Schales*, *Giberson*, and *Brobst* because the possession count alleged conduct that was factually distinct from the conduct alleged in the receipt count. The government points to two factors to demonstrate that it charged and proved separate conduct for each offense: (1) the indictment alleges that the files were received from January 10, 2008, through April 28, 2008, and possessed on May 23, 2008, the date Lynn's laptop computer was seized; and (2) Lynn received the files by downloading them from Limewire, but he later possessed the "depictions that he decided to retain" by moving them from one file folder on the hard drive to another (from the Saved folder to the Shared folder).

**[12]** The allegation of different dates of commission for each offense, by itself, is insufficient to carve out separate conduct. Once a person receives something, he also necessarily possesses it as of that moment, based upon a single action (like downloading a file). *See Davenport*, 519 F.3d at 943. Thus, merely citing different dates or date ranges for the receipt and possession charges alone does not suffice to separate the conduct for double jeopardy purposes. *Cf. Schales*, 546 F.3d at 979-80 (noting that the indictment charged Schales with possession during a period that was a month longer than the period charged for the receipt offense, but nevertheless concluding the indictment was multiplicitous). Rather,

the government must allege and prove distinct conduct underlying each charge, whether the conduct underlying each charge occurred on the same or different dates.

Our inquiry considers whether Lynn's transfer of digital image or video files of child pornography from one folder to another on his laptop's hard drive constitutes separate conduct so as to avoid double jeopardy. "If the government wishes to charge a defendant with both receipt and possession of material involving the sexual exploitation of minors based on separate conduct, it must distinctly set forth each medium forming the basis of the separate counts." *Schales*, 546 F.3d at 980. In other words, the indictment must allege in what form the defendant received the image and in what form he possessed it. In *Schales*, the indictment did not specifically allege different media, nor did the instructions or verdict reflect separate conduct; therefore, the dual convictions violated double jeopardy. *Id.*

**[13]** This case is materially indistinguishable from *Schales* in that Lynn was charged "with receipt of the material by way of downloading it from the [I]nternet onto his computer and possession of this material in the same medium." *Schales*, 546 F.3d at 980. As an initial matter, the movement between folders is not alleged in the indictment.[11] Furthermore, movement between folders cannot reasonably be viewed as placing images onto a different medium so as to possess them separately.[12] There is no dispute that the files remained on the hard drive of the laptop at all times in the same digital format.

---

[11]Count 1 alleged in part that Lynn, "using a computer and modem, received or distributed via the [I]nternet and interstate commerce, at least one visual depiction." Count 2 alleged in part that Lynn "possessed on an internal hard disc drive of a laptop computer at least one image file which contained a visual depiction." Thus, the indictment did not "distinctly set forth each medium forming the basis of the separate counts," as "computer" in Count 1 and "internal hard disc drive of a laptop computer" in Count 2 are not distinct media.

[12]As the experts in this trial testified, moving a file from one folder to another does not transfer or move the data in any real sense; it only changes the location of the "pointer" or file listing that, when clicked by a user, will retrieve the data from its stable location on the hard drive.

**[14]** As in *Schales*, *Giberson*, and *Brobst*, the entry of judgment convicting Lynn of both receipt and possession of child pornography in this case was plain error affecting Lynn's substantial rights,[13] and this error threatens the fairness, integrity, and public reputation of judicial proceedings. *See Davenport*, 519 F.3d at 947-48. We hold that the district court, to avoid the double jeopardy violation, must vacate one of the convictions and then resentence based on the remaining conviction.

## C

**[15]** Finally, Lynn argues that the district court committed procedural error in calculating his Sentencing Guidelines range by including a two-level adjustment for an offense involving a "vulnerable victim." For reasons of judicial economy, we conclude that this issue remains for disposition despite our prior decision vacating the district court's sentence because of a double jeopardy violation. If not resolved now, there may be another appeal on the district court's calculation of the Guidelines range.

We review the district court's interpretation of the Sentencing Guidelines de novo and its factual findings during sentencing for clear error, and its application of the Sentencing Guidelines to the facts for abuse of discretion. *United States v. Rising Sun*, 522 F.3d 989, 993 (9th Cir. 2008). If the district court commits a significant procedural error such as a material error in the Sentencing Guidelines calculation, we must remand for resentencing. *Id.*

Lynn does not dispute that the images and videos he downloaded portrayed the sexual abuse of very young children and

---

[13]Though Lynn's sentences of 210 and 120 months were ordered to be served concurrently, the error affects substantial rights due to the potential collateral consequences that may attach to an additional conviction. *See Davenport*, 519 F.3d at 947.

that those children are properly considered victims of his conduct. *See, e.g.*, *United States v. Boos*, 127 F.3d 1207, 1210-13 (9th Cir. 1997) (holding that the children depicted in child pornography are victims of distribution of child pornography). Rather, he contends that the offense level adjustment for a vulnerable victim should not apply because "there was no evidence that the vulnerability of these young victims in any manner facilitated the commission or concealment of that criminal conduct."

Section 3A1.1(b)(1) of the Sentencing Guidelines provides: "If the defendant knew or should have known that a victim of the offense was a vulnerable victim, increase by 2 levels." U.S.S.G. § 3A1.1(b)(1). The commentary explains that a "vulnerable victim" means a person "who is unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct." U.S.S.G. § 3A1.1 cmt. n.2.

**[16]** In *United States v. Holt*, we addressed a challenge to a sentence for possession of child pornography based on impermissible double counting. 510 F.3d 1007, 1011 (9th Cir. 2007). The district court applied the vulnerable victim enhancement, as well as an enhancement for the sadistic or masochistic conduct portrayed in the images pursuant to U.S.S.G. § 2G2.2(b)(4). Because the enhancements accounted for distinct wrongs, the calculation did not reflect double counting. *Holt*, 510 F.3d at 1012. We explained that, for a possession offense, a "district court can apply the vulnerable victim enhancement where a child is so young and small that he or she is less able to resist than other child victims of pornography." *Id.* at 1011.

**[17]** *Holt* supports the application of the vulnerable victim enhancement in this case. Lynn concedes that the toddlers and children portrayed in the videos were victims of his offense conduct and that their age and size made them vulnerable and particularly susceptible to exploitation. Under the plain mean-

ing of § 3A1.1, no more is required. Lynn's argument regarding a lack of "nexus" between the offense of possession and the abuse is not grounded in the Sentencing Guidelines or any case law.[14] We conclude the district court did not commit procedural error in its calculation of the Sentencing Guidelines range.

## III

**[18]** We affirm the district court's denial of Lynn's motion for judgment of acquittal on the basis of insufficient evidence of the interstate commerce element, and we also affirm the district court's calculation of the Sentencing Guidelines with the vulnerable victim adjustment. But we conclude that the imposition of sentences for both receipt and possession of child pornography violated the Double Jeopardy Clause. We therefore vacate Lynn's sentence and remand to the district court with instructions to vacate one of Lynn's convictions, allowing for it to be reinstated without prejudice if his other conviction should be overturned on direct or collateral review, and to resentence Lynn based on the remaining conviction.

**CONVICTION AFFIRMED IN PART; SENTENCE VACATED; and REMANDED.**

---

[14]Lynn's separate but related contention that the children depicted in the images might have obtained the age of majority since their abuse was captured on film, and were therefore no longer vulnerable by the time Lynn acquired the images in 2008, is without merit. *Boos* established that the children depicted in pornographic material are the victims of offenses under § 2252 without regard to the date of the offense conduct or the age of the children at the time the offense was committed. 127 F.3d at 1210-13; *cf. United States v. Butler*, 92 F.3d 960, 963-64 (9th Cir. 1996) (holding that fictitious children, invented for purposes of a sting operation, were victims of the offense of travel with the intent to engage in a sexual act with a minor).