In the

# United States Court of Appeals

### For the Seventh Circuit

No. 10-2337

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

SCOTT HALLIDAY,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 2:09 CR 20031—**Michael P. McCuskey**, *Chief Judge*.

ARGUED MAY 9, 2011—DECIDED FEBRUARY 14, 2012

Before EASTERBROOK, *Chief Judge,* and WOOD and
WILLIAMS, *Circuit Judges*.

WILLIAMS, *Circuit Judge.* A federal grand jury charged
Scott Halliday in a superseding indictment with two
counts of receiving child pornography (in violation of 18
U.S.C. §§ 2252A(a)(2)(A) and (b)(1)) and one count of
possessing child pornography (in violation of 18 U.S.C.
§§ 2252A(a)(5)(B) and (b)(2)). The indictment charged
that the receipt offenses occurred, respectively, "[o]n or

before April 20, 2008," and "[o]n or before May 27, 2008." The possession count charged that the offense occurred "[o]n or between April 20, 2008, and May 27, 2008." A jury returned a guilty verdict against Halliday on all three counts. On May 28, 2010, the district court sentenced Halliday on all three counts to a prison term totaling 240 months, and judgment was entered on June 2, 2010.

Halliday now appeals his convictions and sentence. First, he argues that the district court's entry of convictions and concurrent sentences on separate counts for receipt and possession of child pornography violates the Double Jeopardy Clause of the Fifth Amendment because possession is a lesser-included offense of receipt. Because we find that the evidence in this case sufficiently shows that the receipt and possession convictions were based on different conduct, we do not find plain error and affirm the entry of his convictions. Halliday also argues that his sentence was based on an erroneous assumption and was unreasonable. We conclude that the district court improperly relied on Halliday's supposed beliefs about the criminal nature of his acts, and vacate Halliday's sentence and remand for a resentencing.

## I. BACKGROUND

In September 2007, Halliday married and moved into his wife's apartment in Rantoul, Illinois. In March 2008, they bought a new computer and set it up in their bedroom. Halliday installed LimeWire, a file-sharing soft-

ware program that they used to download and watch movies. Halliday was a stay-at-home father to the couple's young son, and was spending, by his wife's account, up to ten hours a day on the computer. On May 28, Halliday moved out of his wife's apartment at her request and into his mother's home in Champaign.

In May and July 2008, a criminal investigator for the Illinois Attorney General's Office conducted an internet-based search for shared computer folders that contained suspected child pornography. On May 13, the investigator remotely downloaded from the Hallidays' computer seven shared files containing suspected child pornography. On July 17, the investigator downloaded another six files containing suspected child pornography. In November 2008, law enforcement officers obtained and executed a warrant to search Sarah Halliday's residence, and seized the computer there. Investigators analyzed the computer's hard drive and found 15 videos containing child pornography. The download dates for these videos were: April 20, 2008 (three videos), April 21 (one video), April 27 (six videos), May 1 (one video), May 2 (one video), May 12 (one video), May 26 (one video), and May 27 (one video).

Halliday was interviewed on the day of the search, and initially said he downloaded some child pornography by accident and tried to delete it. He later admitted he used search terms such as "underage girls" to locate pornographic movies involving minor females and that he was most likely responsible for any child pornography found on the computer.

Halliday was indicted and charged with two counts of receiving child pornography and one count of possessing child pornography. According to the indictment, the two receipt offenses occurred "on or before April 20, 2008" (Count One) and "on or before May 27, 2008" (Count Two). The possession offense (Count Three) occurred "on or between" those dates. In her opening statement the prosecutor stated that "[t]he first date and the first count is April 20, 2008. The second count is May 27, 2008." As to the possession count, the prosecutor stated that "[t]he dates for this offense—and this is for Count 3—are between April 20, 2008, and May 27, 2008. So Count 1 and 2 are for the first time he received, the last time he received, and possession for everything in between." During its case, the government published clips from eight videos, including clips from the first and last videos Halliday downloaded, April 20, 2008 (one video) and May 27 (one video), and six videos he downloaded in between, the dates of which were April 27 (three videos), May 1, 2008 (one video), May 2 (one video), May 12 (one video). In its closing arguments, the government stated that the two receipt counts were "for the two dates: April 20, 2008, and the very last time, May 27, 2008." As to the possession count, the prosecutor stated, "[s]o now we're looking at the time period between April 20, 2008, and March—or May 27, 2008." The court did not instruct the jury that it could not use the same videos to convict on both the receipt and possession counts.

The jury found Halliday guilty on all three counts. Halliday did not raise a double jeopardy objection following the verdict, or seek to prevent the district court from entering judgment on any of the three counts.

At sentencing on May 28, 2010, there were no objections to the pre-sentence investigation report, and the district court adopted it in its entirety. The pre-sentence report recommended that the two receipt and the possession counts be grouped together because of the "ongoing and continuous" nature of the offense, and applied United States Sentencing Guideline § 2G2.2(a)(2), which triggered a base offense level of twenty-two. Two levels were added because the material involved a minor who had not attained the age of 12 years; two were added because Halliday utilized LimeWire to facilitate downloading; and another two-level adjustment applied because of the use of a computer. The district court also found that the material involved sadistic or masochistic conduct or other depictions of violence, warranting a four-level adjustment. The court found that the offense involved 15 videos, equaling 1125 images, resulting in a five-level increase. The court therefore calculated a total offense level of thirty-seven, and a criminal history category of one, resulting in an advisory range of 210-262 months' imprisonment. The government requested a 210-month prison term, and the defense agreed with the government and stated that a within-Guidelines sentence would be "appropriate."

Halliday spoke at sentencing, stating that he believed he was coerced into confessing, and asked to take a polygraph test to prove his innocence. He also stated that he had received ineffective assistance of counsel based on counsel's failure to call specific witnesses. The court stated that it would not sentence Halliday to the statutory maximum of 30 years, but would choose a "mid-

range Guideline sentence in excess of what the Government asked for." The court sentenced Halliday to 240 months' imprisonment, consisting of 240 months on the two receipt counts (Counts I and II) and 120 months on the possession count (Count III), to run concurrently. The court also imposed a fifteen-year term of supervised release.

## II. ANALYSIS

### A. Double Jeopardy Claim

Because Halliday did not raise a double jeopardy claim below, this court will review the claim for plain error. Fed. R. Crim. P. 52(b); *United States v. Van Waeyenberghe*, 481 F.3d 951, 958 (7th Cir. 2007). "Under the plain error standard, the party asserting the error must establish (1) that there was in fact an error; (2) that the error was plain; and (3) that the error affects substantial rights." *United States v. Van Allen*, 524 F.3d 814, 819 (7th Cir. 2008) (internal quotations omitted). Even where plain error is found, the defendant is not automatically entitled to relief. The relief afforded by Rule 52(b) is discretionary, and "[w]e will not exercise our discretion to consider the error unless it 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *Id*. (quoting *United States v. Olano*, 507 U.S. 725, 732 (1993)); *see also United States v. Faulds*, 612 F.3d 566, 568 (7th Cir. 2010).

Halliday argues that the district court's entry of separate convictions for receipt and possession of child

pornography was a violation of the Double Jeopardy
Clause of the Constitution, because possession is a lesser-
included offense of receipt. The Double Jeopardy Clause
states that no person shall "be subject for the same
offense to be twice put in jeopardy of life or limb." U.S.
CONST. amend. V. But Halliday's argument in reality is a
question of statutory interpretation. The Supreme Court
has stated that when multiple sentences are imposed in
the same trial, "the role of the constitutional guarantee
is limited to assuring that the court does not exceed its
*legislative authorization* by imposing multiple punish-
ments for the same offense." *Brown v. Ohio*, 432 U.S. 161,
165 (1977) (emphasis added); *see also Albernaz v. United
States*, 450 U.S. 333, 344 (1981). Courts may not "prescrib[e]
greater punishment than the legislature intended."
*Rutledge v. United States*, 517 U.S. 292, 297 (1996) (quoting
*Missouri v. Hunter*, 459 U.S. 359, 366 (1983)). So the ques-
tion is whether Congress intended to punish both
receipt of child pornography and possession of the
same child pornography.

Courts presume that "where two statutory provisions
proscribe the 'same offense,'" a legislature does not
intend to impose two punishments for that offense. *Id.*
(quoting *Whalen v. United States*, 445 U.S. 684, 691-92
(1980); *Ball v. United States*, 470 U.S. 856, 861 (1985)). The
Supreme Court has held that courts determine whether
a defendant has been punished twice for the "same of-
fense" by applying the rule set forth in *Blockburger v.
United States*, 284 U.S. 299, 304 (1932). *See also Rutledge*, 517
U.S. at 297. In *Blockburger*, the Court stated that if "the
same act or transaction constitutes a violation of two

distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger*, 284 U.S. at 304. The Court has at times concluded that two different statutes define the "same offense" because one is a lesser-included offense of the other. *Rutledge*, 517 U.S. at 297; *Ball v. United States*, 470 U.S. 856, 861-64 (1985) (concluding that multiple prosecutions were barred because statutes directed at "receipt" and "possession" of a firearm amounted to the "same offense," in that proof of receipt "necessarily" included proof of possession); *Whalen*, 445 U.S. at 691-95 (concluding that two punishments could not be imposed because rape and felony murder predicated on the rape were the "same offense"); *Brown v. Ohio*, 432 U.S. 161, 167-68 (in multiple proceedings context, applying *Blockburger* to confirm state-court conclusion that offense of "joyriding" was a lesser included offense of auto theft).

In *Ball*, the Supreme Court sought to answer the question of whether Congress intended to subject defendants to separate convictions for "receiving" a firearm and "possessing" that same firearm. *Ball*, 470 U.S. at 861-64. The Court found that " 'when received, a firearm is necessarily possessed' . . . . In other words, Congress seems clearly to have recognized that a felon who receives a firearm must also possess it, and thus had no intention of subjecting that person to two convictions for the same criminal act." *Id.* at 862 (quoting *United States v. Martin*, 732 F.2d 591, 592 (7th Cir. 1984)).

We have not addressed whether possession of child pornography is a lesser-included offense of receipt under *Blockburger* and *Ball*, but we have found that the convictions are distinct in the context of challenges to applications of the United States Sentencing Guidelines. Halliday argues that these cases were wrongly decided, and so we address their relevance to this case. In *United States v. Myers*, 355 F.3d 1040 (7th Cir. 2004), the defendant pleaded guilty to two counts, including receiving three videotapes in violation of 18 U.S.C. § 2252(a)(2), and possession of three or more images of child pornography in the form of video-cassette tapes and computer-generated image files in violation of 18 U.S.C. § 2252(a)(4)(B). Myers argued that the district court erred in calculating his base level as seventeen pursuant to U.S.S.G. § 2G2.2, which was the provision for receipt of child pornography, rather than the lower base level of fifteen pursuant to U.S.S.G. § 2G2.4, which applied at the time to possession of child pornography.[1] The defendant also argued that anyone in possession of child pornography must have received it at some point, and therefore that the distinction between receipt and possession of child pornography was meaningless. We held that § 2252(a)(2), a receipt provision, includes a scienter requirement, such that a person who seeks out only adult pornography, but is sent a mix of adult and child pornography, would not have violated that

---

[1] U.S.S.G. § 2G2.4 was consolidated with § 2G2.2 effective November 1, 2004. *See* U.S. Sentencing Guidelines Manual Supp. App. C, Amend. 664 (2010).

statutory provision. That same person, we went on, could be liable under the possession provision, § 2252(a)(4)(B), if he then decided to retain the material, thereby "knowingly" possessing it. We held that "[b]ecause possession and receipt are not the same conduct and threaten distinct harms, the imposition of different base offense levels is not irrational and therefore Myers' challenge must fail." *Id*. at 1043.

We soon re-affirmed *Myers* in *United States v. Malik*, 385 F.3d 758, 759 (7th Cir. 2004), which involved a similar Guidelines challenge to a sentence imposed after convictions for § 2252A(a)(2)(A), the same receipt provision at issue here, and § 2252A(a)(5)(B), the same possession provision. We stated that "*Myers* . . . holds that, because the receipt offense requires proof that the defendant knew that the persons depicted were minors, . . . while the possession offense lacks that scienter requirement, it is entirely appropriate to use the receipt guideline for conduct that violates both statutes." *Id*. at 760. The receipt provision found in § 2252A(a)(2) was then challenged on vagueness grounds in *United States v. Watzman*, 486 F.3d 1004, 1009-10 (7th Cir. 2007), where the defendant argued that the statute does not define receipt or distinguish the case from mere possession. Relying on *Myers* and *Malik*, we rejected Watzman's argument that receipt and possession are substantially the same offense.

Admittedly, the reasoning of these cases is now in question, both because of our more recent views of the scienter requirement in possession cases, and because

of how our sister circuits have viewed possession and receipt in the child pornography context. Though we stated in *Malik* that knowledge of the age of the individual in the image is not a requirement for possession, we found in *United States v. Peel*, 595 F.3d 763, 771 (7th Cir. 2010) that "[p]ossession of a photograph of an underage girl or boy must be knowing," under 18 U.S.C. § 2252A, and we rejected the argument that the government failed to prove that Peel knew that the person in the photographs he took was under the age of eighteen based on the facts of the case. Other circuits have read *United States v. X-Citement Video, Inc.*, 513 U.S. 64 (1994), which dealt with knowledge under the receipt provision, to apply the same scienter requirement to both possession and receipt of child pornography. *See, e.g., United States v. McNealy*, 625 F.3d 858, 870 (5th Cir. 2010) ("The relevant scienter requirement goes both to the receipt and possession of the material[.]").

The Ninth and Third Circuits have applied *Blockburger* and *Ball* and concluded that § 2252A(a)(5)(B) (possession) is a lesser-included offense of § 2252A(a)(2) (receipt), because receiving an item necessitates taking possession of it. *See United States v. Davenport*, 519 F.3d 940, 943-44 (9th Cir. 2008); *United States v. Miller*, 527 F.3d 54, 71-72 (3d Cir. 2008). Those courts found that the crime of possession *does not* require proof of an element that the crime of receipt does not, and therefore applied a presumption under *Blockburger* that Congress did not intend separate punishments. *Davenport*, 519 F.3d at 947; *Miller*, 527 F.3d at 72. The courts did not find a contrary view clearly expressed in the statute, and therefore deter-

mined that a defendant cannot be convicted of both receipt and possession under § 2252A. *Davenport*, 519 F.3d at 947 (finding that "the presumption against multiple punishment arising from a *Blockburger* analysis could be overcome by a clear expression of legislative intent to the contrary," but that "it cannot be said that Congress 'clearly' intended" separate punishments for the statutes at issue) (citing *Missouri v. Hunter*, 459 U.S. 359, 367 (1983)); *see also Miller*, 527 F.3d at 72 ("No such view is discernible, in this case, from the language of § 2252A or the general descriptions of the statute's purpose contained in the Congressional reports."). Though not at issue in the case before it, the Sixth Circuit assumed the same. *See United States v. Morgan*, 435 F.3d 660, 662-63 (6th Cir. 2006) (stating that the defendant entered a conditional plea to § 2252A(a)(5)(B), "a lesser-included offense of the charged violation," section 2252A(a)(2)).[2]

Our sister circuits' holdings regarding § 2252A would cause us to question our earlier decisions in *Myers*,

---

[2]  In *United States v. Bobb*, 577 F.3d 1366, 1375 (11th Cir. 2009), the Eleventh Circuit agreed with the Ninth and Third Circuits that possession is a lesser-included offense of receipt under 18 U.S.C. § 2252A(a), but found that the defendant's convictions were based on separate conduct. The Second Circuit has similarly found the reasoning of the Ninth and Third Circuits "persuasive," but has not yet specifically applied those cases' rationale. *See United States v. Polouizzi*, 564 F.3d 142, 159 (2d Cir. 2009) ("[A]lthough we find the reasoning of *Davenport* and *Miller* persuasive, that reasoning does not apply perfectly to the circumstances of this case.").

*Malik*, and *Watzman* and their application under *Block-burger* to the entry of separate convictions for receipt and possession. However, we need not decide in this case whether to align ourselves with them on the issue of whether possession of child pornography is a lesser-included offense of receipt. "The *Blockburger* test is implicated only 'where the *same act or transaction* constitutes a violation of two distinct statutory provisions.'" *United States v. Faulds*, 612 F.3d 566, 571 (7th Cir. 2010) (quoting *United States v. Schales*, 546 F.3d 965, 978 (9th Cir. 2008)) (emphasis added). Where separate images form the bases for separate receipt and possession counts, there can be no double jeopardy violation. *Id.*; *see also United States v. Irving*, 554 F.3d 64, 77-79 (2d Cir. 2009) (finding that no double jeopardy violation would exist where the possession count was based on an image that did not form the basis of the receipt conviction). Though the indictment in this case was far from perfect, we find under the facts of this case that because there was ample proof of separate videos that formed the bases of the receipt and possession convictions, any error was harmless and therefore did not affect the defendant's substantial rights under a plain error analysis. *See United States v. Turner*, 651 F.3d 743, 748 (7th Cir. 2011) ("The third prong of the plain error test—whether the error affected the defendant's substantial rights—calls for essentially the same inquiry as a harmless error analysis.") (citing *United States v. Wheeler*, 540 F.3d 683, 690 (7th Cir. 2008)).

Halliday argues that in light of the dates charged in the indictment, the jury could have relied on the same

videos to convict on both the receipt and possession counts. The receipt counts of the indictment charged Halliday with receiving child pornography in violation of § 2252A(a)(2)(A) "[o]n or before April 20, 2008," and "[o]n or before May 27, 2008," respectively. The possession count charged him with possessing child pornography in violation of § 2252A(a)(5)(B) "[o]n or between April 20, 2008, and May 27, 2008." The prosecutor, however, both in her opening and closing statements specified that the videos that formed the bases of the receipt counts were downloaded "on" April 20, 2008 and May 27, 2008, respectively, and that the possession counts were related to videos "between" those dates. Of course the prosecutor's opening and closing statements are not evidence, but those statements coincide with the testimony and evidence presented at trial. Halliday does not now point to any evidence at trial that would cause a reasonable juror to cast aside any of the downloads on specific dates and solely rely on one video to convict on all counts, and he does not dispute that he downloaded eleven different video clips between April 20 and May 27, which were distinct from the ones downloaded on April 20 and the one downloaded on May 27. Despite the deficiencies in the indictment, the prosecutor's statements and the evidence at trial showed that there were different download dates and therefore separate conduct. Any error was therefore harmless.

Halliday relies on two cases from the Ninth Circuit for the proposition that the face of the indictment must properly set forth the separate conduct relied upon for the separate counts, but these cases are distinguishable.

In *United States v. Schales*, 546 F.3d 965, 979 (9th Cir. 2008), the receipt count charged the defendant with knowingly receiving child pornography "from in or about January 2005, and continuing through September, 2005 . . .," and the possession count charged him with knowingly possessing child pornography "from in or about January 2005, and continuing through October 4, 2005." On appeal, the government did not argue that the separate counts were based on wholly distinct images or videos; rather, it argued that the separate conduct was the "receipt of the child pornography pictures on his computer hard drive," and then the "printing out of those images and retaining them on multiple compact discs." *Id*. at 979. The government in *Schales* "argued to the jury that it could convict Schales on all three counts by relying solely on one image." *Id*. at 980. The images at issue were the same, but it was the *medium* that was alleged to have been different. The Ninth Circuit had previously held that "where a defendant has stored sexually explicit images in separate mediums, the government may constitutionally charge that defendant with separate counts for each type of material or medium possessed." *Id*. at 979 (citing *United States v. Lacy*, 119 F.3d 742, 748 (9th Cir. 1997)). In *Schales*, the court therefore held that "[i]f the government wishes to charge a defendant with both receipt and possession of material involving the sexual exploitation of minors based on separate conduct, it must distinctly set forth each *medium* forming the basis of the separate counts." *Id*. at 980 (emphasis added).

Similarly, in *United States v. Lynn*, 636 F.3d 1127, 1137 (9th Cir. 2011), there were different dates alleged in the

indictment with respect to the receipt and possession counts, but, as in *Schales*, the court's inquiry considered "whether Lynn's transfer of digital image or video files of child pornography from one folder to another on his laptop's hard drive constitute[d] separate conduct so as to avoid double jeopardy." Again, this was not a case where the record as a whole showed that the government was relying on different images or videos for the separate receipt and possession counts; it was solely arguing that a transfer from one medium to another allowed separate convictions, a distinction that the Ninth Circuit found had to be specifically alleged and proven.

In this case, the government did not allege at trial, and does not now argue, that the same pornography formed the bases of the separate offenses, and that only the storage medium differed; rather, the government argued to the jury and presented evidence that there were different download dates for each video. We have, in the multiplicity context, found that even where the indictment contains overlapping time periods, the government's evidence at trial can support a finding of separate violations. *See United States v. Snyder*, 189 F.3d 640, 647 (7th Cir. 1999) (finding that the Double Jeopardy Clause was not implicated in a multiplicity challenge where "the indictment alleges that the violations occurred over a nine-month period between January and October 1996, and the government presented evidence that Snyder committed numerous separate acts during this period").

While we do not today overturn *Myers*, *Malik*, or *Watzman*, we note that in future cases, the government would be wise to clearly indicate in the indictment which images are included in each count of the indictment. Additionally, where both receipt and possession are charged, we would also think it wise for the court to instruct the jury that any images and videos relied on for a receipt count cannot form the basis of a conviction for a possession count. The absence of such an instruction in this case, however, does not alter our analysis.

## B.  Sentencing Challenge

Halliday also challenges his 240-month within-Guidelines sentence. He primarily frames his challenge as one attacking the reasonableness of his sentence, but raises issues that go to both procedural error and substantive unreasonableness.

When reviewing any sentence, we must "ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence . . . ." *United States v. Abbas*, 560 F.3d 660, 666 (7th Cir. 2009) (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)); *see also United States v. Hill*, 645 F.3d 900, 905 (7th Cir. 2011). After determining that no procedural errors occurred, we consider whether the sentence is reasonable. *United States v. Gordon*, 513 F.3d 659, 666 (7th Cir. 2008).

We presume that a sentence within a properly calculated Guideline range is reasonable, *United States v. Liddell*, 543 F.3d 877, 885 (7th Cir. 2008), but this presumption is rebuttable. A district court must provide a justification for its sentence "adequate to allow for meaningful appellate review and to promote the perception of fair sentencing." *United States v. Scott*, 555 F.3d 605, 608 (7th Cir. 2009) (quoting *United States v. Omole*, 523 F.3d 691, 698 (7th Cir. 2008)) (internal quotation marks omitted).

Halliday argues that the district court erred in assuming it could impose consecutive sentences for the receipt and possession counts and impose a statutory maximum sentence of thirty years. Because Halliday did not raise a double jeopardy claim or object to the calculation of the statutory maximum, we review the claim for plain error. *See United States v. Washington*, 417 F.3d 780, 788 (7th Cir. 2005) (stating that where a sentencing claim is forfeited, this court can correct an error only if the defendant demonstrates that it was plain error). This assumption would only amount to any error, however, if there were a double jeopardy violation, an argument we rejected for the reasons set forth above.

Next, Halliday argues that the sentencing court violated the command of § 3553(a)(6) to take into account the need to avoid unwarranted sentencing disparities among defendants with similar records who were found guilty of similar conduct. Halliday contends that his sentence was longer than those imposed on other defendants who received or possessed more

images or whose crimes were comparable or worse than his own, and he cites cases from other circuits where defendants received substantially lower sentences for similar, or even worse, conduct. *See, e.g., United States v. Bobb*, 577 F.3d 1366, 1370 (11th Cir. 2009) (defendant convicted of receipt and possession of over 6000 images and sentenced to 96 months); *United States v. Bryner*, 392 Fed. Appx. 68, 70, 73 (3d Cir. 2010) (unpublished) (defendant sentenced to 100 months on each count of receipt and possession of child pornography, to run concurrently, where he possessed "in excess of 1000 images of child pornography"); *United States v. Peacock*, 403 Fed. Appx. 474, 474-75 (11th Cir. 2010) (unpublished) (defendant convicted of possession of child pornography and receiving, or distributing child pornography, downloaded 56 videos (4200 images) and 130 images of child pornography, and received a sentence of 150 months).

We have stated that "[w]hile comparisons are appropriate, it is important in the first instance to recall that the Guidelines were intended to create national uniformity." *United States v. Newsom*, 428 F.3d 685, 689 (7th Cir. 2005). The Supreme Court in *Gall* wrote that where a sentencing judge "correctly calculated and carefully reviewed the Guidelines range, he *necessarily* gave significant weight and consideration to the need to avoid unwarranted disparities." 552 U.S. at 54 (emphasis added); *see also United States v. Pape*, 601 F.3d 743, 750 (7th Cir. 2010) ("[A] district court judge necessarily considers unwarranted disparities among defendants when it decides to impose a within-Guidelines sentence.") (citations omitted). This conception, however, may be in

tension with the fact that some courts have specifically found U.S.S.G. § 2G2.2 to be flawed, and have imposed sentences below the Guidelines range. *See, e.g., United States v. Diaz*, 720 F. Supp. 2d 1039 (E.D. Wis. 2010) (collecting cases); *see also, United States v. Dorvee*, 616 F.3d 174, 188 (2d Cir. 2010); *United States v. Grober*, 624 F.3d 592, 609-10 (3d Cir. 2010) (finding no procedural error in district court's rejection of Section 2G.2.2). As we have noted in the past, seventy percent of district judges surveyed in 2010 indicated that the Guidelines ranges for possession of child pornography are too high, and sixty-nine percent consider the ranges for receipt of child pornography too high. *United States v. Maudling*, 627 F.3d 285, 287 (7th Cir. 2010) (citing U.S. Sentencing Comm'n, Results of Survey of United States District Judges January 2010 through March 2010, at tbl.8 (2010), http://www.ussc.gov/Research/Research_Projects/Surveys/20100608_Judge_Survey.pdf). The Sentencing Commission has reported that in 2010, district judges issued below-Guidelines sentences in forty-four percent of the cases governed by U.S.S.G. § 2G2.2, the Guideline for receipt and possession, compared with 17.9 percent of all cases. *See* U.S. Sentencing Comm'n, Final Quarterly Data Report: Fiscal Year 2010, at 14 tbl.5 & 1 tbl.1 (2010), available at http://www.ussc.gov/Data_and_Statistics/Federal_Sentencing_Statistics/Quarterly_Sentencing_Updates/USSC_2010_Quarter_Report_4th.pdf. The Sentencing Commission has also stated that "[s]entencing courts have . . . expressed comment on the perceived severity of the child pornography [G]uidelines through increased below-guidelines variance and downward departure rates."

U.S. Sentencing Comm'n, *The History of the Child Pornography Guidelines* 54 (2009), available at http://www.ussc.gov/Research/Research_Projects/Sex_Offenses/20091030_History_Child_Pornography_Guidelines.pdf.

While we have rejected the argument that district courts are required to sentence below the Guidelines range in cases involving U.S.S.G. § 2G2.2, we have noted that such criticism has been "gaining traction." *United States v. Huffstatler*, 571 F.3d 620, 622 (7th Cir. 2009); *see also United States v. Maudling*, 627 F.3d 285, 287-88 (7th Cir. 2010). We have also held that "district judges are at liberty to reject *any* Guideline on policy grounds—though they must act reasonably when using that power." *United States v. Corner*, 598 F.3d 411, 415 (7th Cir. 2010) (en banc) (emphasis in original); *see also Pape*, 601 F.3d at 749. But here, Halliday did not present the district court with cases in which defendants with similar conduct received lower sentences, and does not argue that the district court was unaware of its discretion to disagree with the Guidelines as they applied to his case. Accordingly, we cannot find procedural error with respect to the application of § 3553(a)(6).[3]

---

[3] Halliday also argues that his sentence under U.S.S.G. § 2G2.2 was substantively unreasonable, essentially because *Gall* suggests that a within-Guidelines sentence under § 2G2.2 "necessarily" takes into account national disparities, 552 U.S. at 54, but such a sentence does not account for *actual* disparities that abound because of policy disagreements with the Guideline. But because we remand for a resentencing

(continued...)

And so we come to the meritorious objection. Halliday points to statements made during sentencing that he argues show reliance on an improper fact, or rather, improper speculation as to Halliday's beliefs. Because no objection was made at sentencing, we review for plain error.

A review of the sentencing transcript in this case reveals that the sentencing judge relied heavily on Halliday's lack of remorse and his lack of truthfulness, perfectly permissible sentencing factors. *See* 18 U.S.C. § 3553(a)(2)(A) (including as proper factor the need "to promote respect for the law"). But it also reveals that the judge relied on the assumption that Halliday believed the crime was "victimless" and that he did not "believe any of this is criminal." The district judge began the pronouncement of the sentence by discussing a wholly unrelated child pornography case, where the defendant argued that the crime was victimless. He stated:

> A gentleman from Danville decided to take the stand under oath . . . and said: This is a victimless crime. . . . Since that time I determined that maybe people and the Court need to be reminded of what child pornography is. . . . It's not a victimless crime.

The district judge later stated:

---

[3] (...continued)
based on a procedural error, we decline to address this substantive reasonableness argument.

> I don't think you believe any of this is criminal. At least—at least James Falls, who is going to be reviewed by the Court of Appeals, stood before the jury and said: Whoever watches this should be put in jail. But I didn't put it on my computer. Even that person could see the criminality of child pornography while he lied to the jury and said the government put it on his computer.

The judge continued:

> Will [the sentence] ensure consistent, fair, determinate, and proportional sentences to avoid unwarranted disparities among similarly situated defendants? Yes. When this Court has seen no remorse, no acceptance; belief that this is *just ordinary conduct, victimless crimes* . . . .

(Emphasis added.) The repeated focus on the defendant's belief in the lawfulness of the offenses or lack of victims would be perfectly reasonable to discuss, except that nowhere at trial or at sentencing did Halliday maintain or assert that receiving and possessing child pornography was not criminal or were victimless offenses. He simply maintained that he was coerced into a confession, was innocent, and that he suffered ineffective assistance of counsel. The district court was certainly permitted to disregard Halliday's assertion of innocence and ineffective assistance arguments, and did, but it was not permitted to rely upon a false or undeveloped assumption in applying the § 3553(a) factors. Sentencing judges have "discretion to draw conclusions about the testimony given and evidence introduced at

sentencing," but cannot base sentencing determinations on "speculation or unfounded allegations." *United States v. Bradley*, 628 F.3d 394, 400 (7th Cir. 2010) (quoting *United States v. England*, 555 F.3d 616, 622 (7th Cir. 2009)); *see also United States v. Durham*, 645 F.3d 883, 899-900 (7th Cir. 2011). The judge's statements about Halliday's belief that the crimes at issue were "victimless" were pure speculation.

Having determined that a plain error occurred, we address whether the error affected Halliday's substantial rights "by resulting in a different sentence than he otherwise would have received." *Durham*, 645 F.3d at 900 (citing *United States v. Corona-Gonzalez*, 628 F.3d 336, 341 (7th Cir. 2010)). Our reading of the sentencing transcript leads us to conclude that it is "not improbable that the trial judge was influenced by improper factors in imposing sentence," *id.* (citation omitted), especially where the sentencing judge specifically referenced Halliday's "victimless" belief when addressing the § 3553(a) factors. Finally, we conclude that a sentence potentially based on such an erroneous assumption affects the fairness, integrity, and public reputation of the proceeding. *Id.* (citation omitted). We therefore vacate Halliday's sentence and remand for a new sentencing proceeding. On remand, the district court must reassess the sentence without the erroneous assumption about Halliday's beliefs referenced above. Because we remand for a resentencing, we do not address Halliday's argument that his sentence was substantively unreasonable.

### III. CONCLUSION

For the reasons set forth above, we AFFIRM Halliday's conviction but VACATE his sentence and REMAND for reconsideration.